Ira Berger & Sons and Pennsylvania Manufacturers' Association Insurance Company, Insurance Carrier, Appellants, *v.* Workmen's Compensation Appeal Board and Joseph Bartosevich, Appellees.

Argued January 9, 1975, before Judges KRAMER, WILKINSON, JR. and MENCER, sitting as a panel of three.

*Anthony Ciotola,* with him *Louis G. Feldmann* and *Feldmann and Ciotola,* for appellants.

*Eugene E. Duffy,* with him *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE WILKINSON, February 10, 1975:

On August 21, 1967, claimant-appellee, a carpenter employed by appellant, suffered a compensable injury to his back and thereafter entered into a compensation agreement with appellant for total disability payments of $52.50 per week. On February 19, 1969, appellant filed a termination petition alleging that claimant was able to return to work on December 1, 1968. Claimant's answer alleged that he was still disabled.

In the course of three hearings, exhibits were submitted and testimony was taken from claimant, from claimant's medical witness, Dr. Feddish, a chiropractor, from appellant's medical witness, Dr. Gunderson, an orthopedic surgeon, and from an impartial medical expert appointed by the Workmen's Compensation Appeal Board, Dr. Umlauf, a psychiatrist and neurologist. On October 8, 1971, the referee granted the petition to terminate benefits. He found that although claimant was

then disabled, the disability was not causally related to the accident of August 21, 1967, and that claimant was able to return to work on December 1, 1968. In order to keep this case in its proper chronological perspective, we will summarize the testimony which led to this first referee's decision.

Dr. Gunderson testified that he last examined claimant on November 8, 1968, and found that he was "largely recovered from any effects of his injury and was able to return to work as of December 1, 1968." Claimant testified that he was gradually improving until November 8, 1968, but that during a leg raising test by Dr. Gunderson, his pain reappeared. He then went directly to Dr. Feddish, his chiropractor.

Dr. Feddish testified that claimant first came to him for treatment for the August 21, 1967 injury on September 14, 1967, and that he treated him until October 21, 1968, and that during this period, he had administered approximately 200 adjustments and taken 32 x-rays. He testified that he discharged claimant on October 21, 1968, as 90% recovered. Dr. Feddish then testified that he next saw claimant on November 8, 1968, following claimant's examination by Dr. Gunderson. He stated that claimant was then totally disabled and attributed the disability to a reinjuring of the back caused by the leg raising test.

The referee then continued the proceedings in order to take the testimony of an impartial medical expert to be appointed by the Board. Dr. Umlauf examined claimant on November 11, 1970, and found claimant to be totally disabled. He rejected the possibility that claimant was reinjured by Dr. Gunderson, or that the current disability was related to the August 21, 1967 accident. Rather, Dr. Umlauf attributed claimant's disability to an iatrogenic conversion reaction (variously referred to throughout the record as a "conversion reaction," "psychoneurosis" and "conversion neurosis") caused by Dr. Feddish's treatment. Dr. Umlauf explained his diagnosis

as follows: "In summary, I suppose it would be best just to say that number one, I could find no organic disease of the central or peripheral nervous systems to account for the patient's symptoms. Secondly, about the only diagnosis that I could make would be one, a psychiatric one, which would be called a conversion reaction where emotional conflicts are converted into bodily symptoms. And I would have to add the word maybe you never heard it before, iatrogenic. And this means that sometimes the person can develop an illness as the result of treatment. To make it a little clearer, for example, if an individual has a little heart attack and the doctor insists on seeing this patient two or three times a week and tells him to take it easy and be careful of your diet and over emphasizes the damage that is done, the patient frequently soon will develop a secondary illness which would be a psychiatric one. In other words, over concern about his illness which then would be termed an iatrogenic. Genic meaning caused by and the iatro means from treatment."

As stated earlier, the referee granted the petition to terminate. The Board, however, reversed and remanded for the purpose of having a second impartial physician examine claimant. Another hearing was held before a second referee who took testimony from and admitted into evidence the report of a Dr. Whitehill, an orthopedic physician, the second impartial medical expert in this case. His testimony and his diagnosis were virtually identical to that of Dr. Umlauf. Dr. Whitehill stated in his written report: "It is my feeling this patient is suffering from the latter [a very marked conversion neurosis] and that he has a conversion reaction. I feel this patient's problem is one created or resulting from over treatment and suggestion by Dr. Feddish."

On October 12, 1973, the second referee's decision was filed. He accepted the testimony of Drs. Umlauf and Whitehill that claimant was totally disabled and, by inference, that the disability was directly caused by the treat-

ment of Dr. Feddish. However, he concluded that the current disability was legally caused by the original accident and, therefore, dismissed the petition to terminate. The Board affirmed and appellant has appealed to us.

The second referee and the Board relied on the rule that injuries occurring in the course of medical treatment made necessary by the original injury can themselves be made the basis of an award of compensation notwithstanding the fact that the direct cause of the subsequent injury may have been negligent medical treatment. *See McAvoy v. Roberts and Mander Stove Company,* 173 Pa. Superior Ct. 516, 98 A.2d 231 (1953), and *Hurchick v. Falls Township Board of Supervisors,* 32 Pa. D. & C. 2d 729, *aff'd per curiam,* 203 Pa. Superior Ct. 1, 198 A.2d 356 (1963), and cases cited therein. Appellant argues that the direct cause of claimant's present disability is too remote and that the August 21, 1967 accident cannot be the legal cause of this condition. We must agree with appellant.

The parties agree claimant's conversion reaction was due to the "mismanagement" or "improper" treatment given him by Dr. Feddish. The physical symptoms, which are now totally disabling, were caused by claimant's mental reaction to this treatment. Had Dr. Feddish accidentally or negligently broken claimant's leg in the course of this treatment, absent any other issue, there is little doubt that an award based on any disability due to the broken leg would be compensable. *Hurchick, supra.* The instant case is not that simple. Here, claimant was essentially recovered from his original injuries according to both Dr. Feddish and Dr. Gunderson and *thereafter* became totally disabled. The cause of this subsequent physical disability is claimant's mental condition. There is no evidence to indicate that the occurrence of this mental condition can be pinpointed to a specific date or a specific incident. Rather, the evidence is that it developed over a period of time, but that the physical symp-

toms of this condition did not manifest themselves until after claimant had recovered from his prior injuries.

It is settled that as the party petitioning to terminate the compensation agreement, the appellant has the burden of proving that claimant was either no longer disabled or that his existing disability was no longer a product of the original injury. *Tioga Textiles Associates, Inc. v. Workmen's Compensation Appeal Board,* 13 Pa. Commonwealth Ct. 492, 319 A.2d 211 (1974). We find that the appellant has met this burden and that the Board erred as a matter of law in concluding that the current disability was caused by the August 21, 1967 accident. The connection here is too tenuous to support such a conclusion.

Accordingly, we enter the following

### ORDER

Now, February 10, 1975, the order of the Workmen's Compensation Appeal Board, dated May 16, 1974, is reversed in so far as it denied the petition to terminate benefits as of December 1, 1968, and said petition is hereby granted. That part of the Board's order which granted medical expenses to claimant in the amount of $1,073.00 is affirmed.