Chamberlain Manufacturing Corp., Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Carl Wolter, Respondents.

Argued June 4, 1979, before Judges CRUMLISH, JR., BLATT and DiSALLE, sitting as a panel of three.

*Joseph E. Gallagher,* with him, of counsel, *O'Malley, Bour & Gallagher,* for petitioner.

*Francis W. Roscoe, II,* with him, of counsel, *William Zaharellis,* and *Zacharellis & Tellie,* for respondent.

OPINION BY JUDGE DiSALLE, September 27, 1979:

In this termination proceeding arising under The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1

et seq., Chamberlain Manufacturing Corporation (Employer), seeks review of an order of the Workmen's Compensation Appeal Board (Board) affirming the referee's dismissal of Employer's termination petition and awarding compensation benefits to Carl Wolter (Claimant) based upon partial loss of earning power. We affirm.

Claimant, while employed by Employer as a foreman, suffered disabling head injuries on October 26 and 31, 1972. Following hospitalization and a cervical fusion, he returned to work on January 18, 1973, having received total disability payments from the date of the injury until his return. Four days later, he was laid off as a foreman and rehired as a security guard, earning substantially less. Claimant again became totally disabled on March 11, 1973, and received compensation from that date until May 13, 1973, when he returned to work as a security guard. Employer promptly filed a petition to terminate, alleging that Claimant had returned to work with no loss of earning power. Whether Claimant did in fact suffer a loss of earning power is the issue presently confronting us.

At some point in time subsequent to the accident, Petitioner developed an anxiety-related stammering problem that persists to the present day. The referee found that this speech impediment was causally related to the original injury and rendered Claimant unable to effectively perform his tasks as foreman. Employer challenges the following findings of fact made by the referee as they relate to Claimant's disability.

2. . . . The injuries aggravated an underlying cervical disc as a result of which a cervical fusion was performed by Wr. William A. Black in November of 1972. Further as a result of the injuries and hospitalization for a fusion,

the claimant developed an anxiety neurosis which affected the claimant's speech. The claimant has a great deal of stammering and hesitation when expressing himself, all of which is causally related to the accident and injury while in the course of employment for the defendant on October 26, 1972.

. . . .

8. . . . As a result of the injury the claimant was totally disabled from November 7, 1972 to January 17, 1973, inclusive. On January 18, 1973 the claimant returned to work in the capacity of a supervising foreman with the same duties as at the time of the injury. The claimant had great difficulty in performing this job due to the severe speech impediment, specifically severe stammering which hindered him in effectively communicating with the workers under his supervision, giving directions, orders and instructions regarding the work to be performed.

In addition, the claimant still had pain in the neck area which restricted his movements, dizziness at times and pain in the left knee when he would walk. The claimant was advised by his immediate supervisor that after January 20th, he would no longer be performing his job as foreman in his department and offered the claimant a position as a security guard or be layed off from work. The claimant accepted the position of a security guard effective January 21, 1973 at an hourly rate of $2.90 which resulted in a loss of earnings. The defendant employer replaced the claimant with another foreman in claimant's department although claimant had been employed by the defendant company for a longer period of time

than the person succeeding him to this position. The work in claimant's department had continued until June of 1975 when the job ceased.

. . . .

10. That the claimant still suffers the residual effects of his injury in particular an anxiety neurosis as result of which the claimant has a severe speech impediment and that he continues to stammer when he attempts to express himself and communicate with others. This speech impediment was quite obvious at the numerous hearings before this Referee. The medical evidence of the defendant in the testimony of Dr. Boriosi, a psychiatrist, testified that the claimant has severe stammering which was causally related to the injury of October 26, 1972.

11. That since the claimant was unable to perform his normal and regular job as a foreman when he returned to work on January 18, 1973 due to a speech impediment and was subsequently removed by the employer after three days and took a job which paid lesser earnings, he is entitled to receive partial compensation based upon a loss of earnings from January 21, 1973.

12. That the claimant's change of status from foreman to security guard was not due to a lay off but due solely to the employer's desire to replace the claimant with another foreman in claimant's department who did not have a speech impediment and was able to perform the job as a supervisor foreman in an effective manner to accomplish the responsibilities of the job.

Neither side disputes the fact that the type of injury sustained here, a speech impediment, is a com-

pensable disability within the meaning of the Act.[1] Employer argues, however, that the accident at work did not cause Claimant's speech disability. Since the party petitioning for termination of a workmen's compensation agreement bears the burden of proving that the employe's disability has ceased or that the present disability did not result from the compensable injury,[2] we must determine whether the Board's action affirming the referee's award of benefits can be sustained without a capricious disregard of evidence. We believe that it can.

The record contains unequivocal testimony on the causation issue. Dr. Gavin, who began treating Claimant on March 6, 1973, was asked if there was any causal relationship between Claimant's anxiety and stammering and the injuries he sustained at work. He responded: "I believe it is a direct relationship between the injuries, the contemplation of the treat-

---

[1] See *Scott v. Powell Coal Co.*, 402 Pa. 73, 166 A.2d 31 (1960), wherein our Supreme Court held that the loss of an employe's senses of taste and smell constituted a partial disability compensable under Section 306(b) of the Act, 77 P.S. §512. The Court stated that "a claimant who has suffered a permanent partial disability, such as the loss of the sense of taste and smell, or the loss of the use of any functional part of the body, as a result of an accident suffered in the course of his employment, may still recover for that loss under the . . . Act." *Id.* at 75-6, 166 A.2d at 33.

[2] *Berger v. Workmen's Compensation Appeal Board,* 17 Pa. Commonwealth Ct. 370, 332 A.2d 562 (1975), *rev'd on other grounds,* 470 Pa. 239, 368 A.2d 282. Interestingly enough, in this case, also involving a petition to terminate, the claimant had almost completely recovered from a disabling work-related injury. The disability for which he sought further compensation arose after he had recovered from the original injury and resulted from a conversion neurosis brought on by the treatment he had received for that injury. In affirming the Board's award, our Supreme Court held that where medical treatment, sought by the claimant in good faith following a work-related injury, aggravates that injury or causes additional injury, the law treats the original accident as having caused the additional injury.

ment, the treatment, the anxiety and subsequent stammering. I think they are all related.'' Even Dr. Boriosi, testifying on behalf of Employer, stated as follows:

> If the history given to me was accurate by him where his pre-morbid personality prior to the accident was one in which there was no stammering and subsequent to the accident there is stammering, which we know can be caused by increase in anxiety, then one would have to assume that the accident was the positive agent.

Employer argues that nothing in the record indicates that Claimant stammered immediately upon returning to work in January of 1973. It points out that not only did the hospital charts fail to make mention of this problem, but that Claimant could not remember exactly when he began stammering. At one point in its brief, Employer states that ''[o]ne of ordinary intelligence could not possibly have avoided considering *the absence* of evidence of stammering.'' (Emphasis added.)

It seems clear to this Court that Employer improperly seeks to place the burden of proof on Claimant. To the extent that Employer argues that there is insufficient evidence to sustain a finding of a work-related disability, it misunderstands the applicable law concerning burden of proof. That burden, as we have already said, falls upon Employer, and since it has not demonstrated either that Claimant's disability has ceased or that the stammering did not result from the falls at work, we must sustain the award of benefits.

We realize that a witness for Employer testified that Claimant's disability would not impair his ability to function as a foreman. Dr. Gavin, however, had this to say about the extent of Claimant's disability:

I think it is difficult to be precise because there is an inter-relationship between two major problems the man has. His physical disability of his neck injury make it impossible for him to do any type of physical exertion involving the use of the arms, shoulder and neck. Therefore, as a result of that particular problem, his capacity for work would be limited to none [sic] physical activity, which would almost always involve the use of one's mind in a calm manner and being able to communicate in a normal manner which is anxiety and stammering, leaving him almost 100% disabled when both problems are considered at the same time.

Later, the following colloquy occurred between Dr. Gavin and counsel for Employer:

Q. Doctor, you indicated that Mr. Wolter's neck injury prevents physical exertion, using the arms, shoulders and the neck. So therefore he is limited to non physical activities. You understand that as a security guard he is required to engage in physical activity making his rounds, things of that nature?

A. I should add to that, activity involving the use of the arms, neck and head. Where he would be driving he would be unsafe because the turning of the head would cause pain, perhaps a moment of dizziness. If there were, he were to left [sic] or reach, it would cause an aggravation of the pain in the neck and a return for an unknown period of time of maybe severe pain in the neck and then he would be unable to work at all for a period of time.

Q. And he is ambulatory and things of that nature?

A. As for walking, he would be ambulatory.

Q. So therefore you indicated he was limited to only a type of work in which he would use his mind and his mental process in a calm manner?

A. Yes.

Q. And that if it is required to communicate, then the stammering and this anxiety would then come into play?

A. Yes.

Q. But if he were to have employment in a field that did not require the use of the right arm, shoulders and the neck, physical exertion then, in which he would not be in an environment that would arouse his anxiety, it would be fair to say he could engage in that type of activity?

A. I think that if you could develop a job that would allow all these features, that he could perform that task. I think the fact that he has what he has today would make any employer reluctant to hire him for fear them [sic] would not have that particular job available. Now this is an opinion, I admit.

It is the function of the referee to resolve conflicts in testimony. The referee here did just that and we cannot agree with Employer that he capriciously disregarded competent evidence in so doing.

ORDER

AND Now, this 27th day of September, 1979, the order of the Workmen's Compensation Appeal Board, dated August 15, 1977, affirming the referee's denial of the Petition to Terminate, is hereby affirmed and judgment is entered for the claimant. Chamberlain Manufacturing Corp., and/or its insurer, is hereby directed to pay claimant compensation at the rate of $50.13 per week from January 21, 1973 for a loss of

earnings and continuing thereafter until such time as the claimant's weekly wage changes and then compensation to be determined at the rate of two-thirds of said loss of earnings until such time as either the work-related disability ceases and/or the claimant's weekly wage becomes equal to the pre-injury wage on October 26, 1972.

Deferred payments of compensation shall bear interest at the rate of ten per centum per annum from the due date thereof.

Employer shall pay counsel fees of twenty per cent (20%) of the total award.