368 A.2d 282

**WORKMEN'S COMPENSATION APPEAL BOARD and Joseph Bartosevich, Appellants,**

v.

**IRA BERGER & SONS and Pennsylvania Manufacturers' Association Insurance Company.**

Supreme Court of Pennsylvania.

Argued Oct. 13, 1976.

Decided Jan. 28, 1977.

240

Eugene E. Duffy, Richard L. Zack, Hazleton, for appellants.

Feldmann & Ciotola, Louis G. Feldmann, Anthony J. Ciotola, Hazleton, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This appeal arises from an order of the Commonwealth Court which reversed an order of the Workmen's Compensation Appeal Board and granted appellee-employer's petition to terminate benefits.

Claimant-appellant, Joseph Bartosevich (claimant) was injured on August 21, 1967, while working for Ira Berger & Sons (appellee). The parties entered into a compensation agreement for total disability payments of $52.50 per week. On February 19, 1969, appellee filed a termination petition which alleged that claimant was able to return to work on December 1, 1968. On October 8, 1971, a referee granted the termination petition, finding that, although appellant remained disabled, his disability was not causally related to the accident of August 21, 1967. Claimant appealed and the Workmen's Compensation Appeal Board (the board) vacated the referee's findings and remanded the case for appointment of an impartial medical expert. Upon rehearing, a different referee denied the termination petition, and the board affirmed. Two impartial medical experts testified that claimant was totally disabled. The disability was due to "conversion neurosis caused by the mismanagement or improper treatment of [the claimant] by [a chiropractor], who was selected by the claimant himself." Since there was no evidence that the claimant was either malingering or acting in bad faith when he sought treatment for the initial injury, the board held that the continuation of the disability was a direct result of the initial injury.

On February 10, 1975, the Commonwealth Court reversed the board's order. *Berger & Sons v. W. C. A. B.,* 17 Pa.Cmwlth. 370, 332 A.2d 5 (1975). Appellant filed a petition for allowance of appeal, which this court granted on July 7, 1975.

■  In reviewing decisions of the board, the Commonwealth Court must follow § 44 of the Administrative Agency Law.[1]  See 77 P.S. § 876.1.  That law provides, in relevant part:

"The court to which the appeal is taken shall hear the appeal without a jury on the record certified by the agency.  After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of sections thirty-one to thirty-five inclusive of this act . . . have been violated in the proceeding before the agency, *or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.*"  71 P.S. § 1710.44 (Emphasis supplied.)

The board heard testimony of Dr. Charles Umlauf, an impartial medical expert, who is board certified in both neurology and psychiatry.  Dr. Umlauf testified that the claimant was totally disabled as a result of a conversion neurosis.  A second impartial physician, Dr. John Whitehill, an orthopedic specialist, offered testimony that was the same as Dr. Umlauf's.  Based on this testimony, the referee found that:

"The claimant suffers a total disability which is causally related to the accident which claimant suffered in the course of his employment on August 21, 1967."

The board reaffirmed this finding of fact.

■  The issue before this court is, thus, a narrow one:  Is a conversion neurosis which results from negligent treatment of a compensable injury *causally related* to the initial compensable injury?

---

[1]  Act of June 4, 1945, P.L. 1388, § 1, et seq., 71 P.S. § 1710.1, et seq.

Dr. Umlauf explained conversion neurosis as:

"In summary, I suppose it would be best just to say that number one, I could find no organic disease of the central or peripheral nervous systems to account for the patient's symptoms. Secondly, about the only diagnosis that I could make would be one, a psychiatric one, which would be called a conversion reaction where emotional conflicts are converted into bodily symptoms. And I would have to add the word maybe you never heard it before, iatrogenic. And this means that sometimes the person can develop an illness as the result of treatment. To make it a little clearer, for example, if an individual has a little heart attack and the doctor insists on seeing this patient two or three times a week and tells him to take it easy and be careful of your diet and over emphasizes the damage that is done, the patient frequently soon will develop a secondary illness which would be a psychiatric one. In other words, over concern about his illness which then would be termed an iatrogenic. Genic meaning caused by and the iatro means from treatment."

The leading case in this area is *Hurchick v. Falls Twp. Bd. of Supervisors*, 32 Pa.D. & C.2d 729, 734–36, affirmed per curiam on the opinion of the court below, 203 Pa.Super. 1, 198 A.2d 356 (1964), which stated:

*"Where claimant in good faith seeks medical treatment for his injury, and the medical treatment itself either aggravates the existing injury or causes new or additional injury, the law regards the latter as having been caused by the original accident. Thus, . . .* where claimant injured an already diseased hand, causing temporary swelling, and the hand was bandaged too tightly, resulting in gangrene and the ulti- ·mate amputation of the hand, an award to the claimant for loss of the hand was sustained. Similarly, it has been held that compensation is payable for disability or even death resulting from an anesthetic used in

an operation to treat the original injury . . . ; or where the death was caused by an antitetanus injection . . . ; or where death resulted from a heart attack precipitated by shock and fright at the prospect of having a splinter removed surgically . . . .

"The subsequent aggravation or new injury is attributable to the original accident even in cases of mistaken diagnosis, unnecessary operations, and negligence in treatment. . . .

"It seems probable that certain limitations to the generality of the foregoing principles should be observed. While we have not been made aware of any reported decisions on the subject, it seems only logical to conclude that *if the patient is actually malingering, that is, fabricating symptoms, and additional injury results from medical procedures designed to treat the alleged symptoms or to ascertain the cause thereof, such additional injury could not be attributed to the original accident. By the same token, if the subsequent exploratory or diagnostic procedure discloses that the symptoms stem from some cause unrelated to the accident, it would seem that the exploratory operation and any damages caused by the operation should be attributed to the condition which produced the symptoms, even though the parties may originally have thought that the symptoms were produced by the accident.* But if a claimant genuinely experiences symptoms after an accident which were not present before the accident, and if his doctor in good faith performs a [procedure] to determine the cause of the symptoms, and the [treatment] causes disability, the disability is compensable even though the [treatment] does not affirmatively establish that the symptoms were due to the original accident. In such a situation, the employer and his carrier can be relieved of liability for the disability occasioned by the [treatment] only if it is established either (1) that the claimant did not in fact

experience the symptoms complained of, whose cause was being sought by the [treatment], or (2) that the symptoms were produced by some cause unrelated to the accident." (Citations omitted.) (Emphasis supplied.)

Both impartial experts testified that the claimant was neither malingering nor seeking treatment for symptoms existing before the accident. *Hurchick, supra,* establishes that, as a matter of law, the total disability occasioned by mistreatment was caused by the original compensable injury.

The Commonwealth Court attempted to distinguish *Hurchick* by stating that the connection between the initial injury and the present disability was too tenuous to allow compensation. The court reasoned, at Pages 374–75:

". . . Here, claimant was essentially recovered from his original injuries according to both Dr. Feddish and Dr. Gunderson and *thereafter* became totally disabled. The cause of this subsequent physical disability is claimant's mental condition. There is no evidence to indicate that the occurrence of this mental condition can be pinpointed to a specific date or a specific incident. Rather, the evidence is that it developed over a period of time, but that the physical symptoms of this condition did not manifest themselves until after claimant had recovered from his prior injuries." (Emphasis in original.)

■■ We believe the Commonwealth Court erred for two reasons. First, it accepted findings of fact which were vacated by the board. The testimony of Drs. Feddish and Gunderson was part of that proceeding which the board vacated. More importantly, we can find no reason for disallowing benefits in case of a relapse where the remaining *Hurchick* standards are met. Claimant sought treatment, in good faith, and that treatment has

totally disabled him. All experts testified that claimant was neither malingering nor fabricating symptoms. The only treatment sought by the claimant was for symptoms which were not present before the accident. The instant case is on all fours with *Hurchick, supra.* We believe the Commonwealth Court's attempted distinction is unwarranted. As long as the subsequent disability is a result of negligent treatment for the initial injury, the disability is compensable under the Workmen's Compensation Act.

Order of the Commonwealth Court is reversed and the order of the Workmen's Compensation Appeal Board is reinstated.

ROBERTS and POMEROY, JJ., took no part in the consideration or decision of this case.