## Board of Education of the School District of Philadelphia et al., Appellants *v.* Philadelphia Federation of Teachers Local No. 3, AFT, AFL-CIO et al., Appellees.

491

Argued September 26, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Rogers, Blatt, DiSalle and MacPhail. Judges Mencer and Craig did not participate.

*Vincent J. Salandria,* for appellants.

*Leonard M. Sagot,* with him *Randall J. Sommovilla,* and, of counsel, *Sagot & Jennings,* for appellees.

Opinion by Judge Rogers, February 16, 1979:
The Board of Education of the School District of Philadelphia has appealed a final decree of the Court

of Common Pleas of Philadelphia County enjoining the board from enforcing with respect to some of its employees a board resolution requiring all employees appointed on or after February 1, 1972 to become residents of the district within one year from the date of their employment.

On January 24, 1972 the board adopted a resolution which required all employees hired after February 1, 1972 to reside within the district. Appellee, Philadelphia Federation of Teachers Local No. 3 AFT, AFL-CIO (union), the certified collective bargaining representative of the district's employes, instituted a suit in equity in the Court of Common Pleas to enjoin the enforcement of the resolution. This dispute was settled by agreement of the parties incorporated into an order of the court below following:

### STIPULATION AND ORDER

AND NOW, this 19 day of April, 1972, IT IS HEREBY ORDERED AND DECREED AND IT IS HEREBY AGREED by and between the Philadelphia Federation of Teachers and The School District of Philadelphia that in consideration for the Federation withdrawing with prejudice its Complaint in Equity and its withdrawal with prejudice of arbitration in the dispute with the School District's January 24, 1972, Resolution concerning residency requirements for its employees, the Board of Education of The School District of Philadelphia hereby agrees to modify its January 24, 1972, Resolution as follows:

### RESOLUTION

'WHEREAS, It is in the best interest of the School District of Philadelphia that its new future employees live within the School District, and

'WHEREAS, it is the intention of the Board of Education, in these resolutions, to establish as a requirement of employment of the School District of Philadelphia that all new future employees must live within the School District, and

'WHEREAS, the Board of Education believes that, while the enforcement of this policy as to new employees would be in the best public interest, the Board of Education recognizes that requiring certain employees to reside within the School District of Philadelphia and/or to establish residence within the School District, could, in some cases, cause serious physical, emotional and financial hardship to the employees affected, and, in exceptions dictated by compassion, will exclude certain employees from compliance with the residency requirement, now, therefore, be it

'RESOLVED, That all new future employees of the School District of Philadelphia who are temporarily or permanently appointed to any position with the School District of Philadelphia on or after February 1, 1972, must become during his period of employment a resident of the School District of Philadelphia within one year from the date he or she was first employed by the School District, and be it

'FURTHER RESOLVED, That the School District shall grant exceptions to the residency requirement for certain new future employees as follows:

'(a) New employees who have executed an Agreement of Sale for a home outside the School District prior to February 1, 1972, with settlement scheduled after that date;

'(b) New employees who have executed a lease for the rental of an apartment or home prior to February 1, 1972, with occupancy scheduled after that date;

'(c) New employees who have executed a construction contract prior to February 1, 1972, for construction of a home outside the School District with possession scheduled after that date;

'(d) New employees who have had a firm offer of employment made by the School District that was accepted by the employee prior to February 1, 1972, and an effective date of employment after February 1, 1972, was established;

'(e) New employees who are married and who live in a residence outside the School District because their spouse is so required to reside;

'(f) New employees who have resided continuously with their parents for one year prior to their employment with the School District if the parent has made a commitment as to change in residence and the establishment of a separate residence would create a severe hardship;

'(g) New employees who are prospective Teacher Grant recipients who may have moved outside the School District with their parents during the period they were in school and not self-supporting.'

The Federation and the School District further agree that if there is any dispute as to the application, meaning or interpretation of this Stipulation and Order and/or of the modified Resolution as hereinabove related, such dis-

pute(s) shall be referred to the Hon. NED L. HIRSH, for his decision and order, and same shall be final and binding on the parties.

    (s) Ned L. Hirsh
     NED L. HIRSH, J.

(s) Leonard M. Sagot
LEONARD M. SAGOT, Counsel
Philadelphia Federation of
Teachers, Local 3, AFT, AFL-CIO
(s) Vincent J. Salanoria
VINCENT SALANORIA, Counsel
The Board of Education of the
School District of Philadelphia

The 1972 litigation was docketed in the court below to No. 4417 March Term 1972. The litigation with which we are here concerned was commenced in July 1976 when the union[1] again sued the school board in equity. By its complaint in this suit docketed to No. 3583 July Term 1976, after reciting the history of the 1972 lawsuit, the union averred that the board had failed to enforce its residency requirement promulgated in January 1972 and modified by the court approved agreement of April 19, 1972 during the four years from April 1972 until May 1976; that as many as 600 employees had been hired after February 1, 1972, many of whom were told by "agents in the defendants' personnel department" that they need not be concerned about the residency requirement because it was not being enforced or would not be enforced; that many of those employees took jobs with the defendant school district relying upon these statements of the board's agents and had established residence outside

---

[1] The union sues by its President, General Vice-President and Treasurer as trustees ad litem.

the school district or had given up employment opportunities in other districts or had enrolled their children in schools outside the district; and that by letters, most dated May 12, 1976, the school board notified about 600 of its employees resident outside the district that the board reaffirmed its residency requirement and that these employees were required to become residents of the school district by no later than October 31, 1976 or be terminated. The union says that these circumstances—the board's failure to enforce the January 1972 resolution, as modified, requiring residency on the part of all employees hired after February 1, 1972; the alleged statements of school district agents to persons about to be hired that the residency requirement was not being or would not be enforced; the reliance by these employees with respect to the acquisition of homes, the giving up of other job opportunities and the enrollment of children in suburban schools—demonstrate laches on the part of the board which should impel the court to set aside the board's resolution and that the board is estopped from enforcing its residency requirement. The union asked the court to enjoin the board from enforcing the residency requirement against employees hired after February 1, 1972 and before May 12, 1976.

The defendant filed an answer on the merits. The matter was assigned to Judge NED L. HIRSH to whom, it will be recalled, the earlier lawsuit was also assigned. Judge HIRSH recused for a purely personal reason not necessary to mention and another judge was assigned.

The extensive record produced by the parties at the hearings below consists for the most part of colloquy of counsel and documentary evidence. The union depended for proof of the crucial averments of its complaint upon an affidavit of an associate of the union's

lead counsel reporting the results of interviews with and a written communication received from 78 employees of the district. This document went into the record without objection on the part of the counsel for the school board but without concession by him of the truth of the facts reported to associate counsel by the 78 employees or other informants.

The chancellor, although agreeing that the school board had a perfect right to have and to enforce a residency requirement as decided in *McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645 (1976), found, based entirely on the affidavit of the associate counsel for the union, that employees hired after February 1, 1972 reasonably believed that there was "an official policy of non-compliance [sic] with the residency requirement" and that these employees had made "essential life-planning decisions on that assumption." The chancellor then wrote that "The court cannot allow the defendant to belatedly enforce this residency requirement and completely disrupt and uproot families and individuals and impose other untold hardships." After exceptions were disposed of, the chancellor by final decree enjoined the board and the members of the board from enforcing the residency requirement embodied in the court's order of April 19, 1972 in the first suit, against all employees engaged after February 1, 1972 and before May 12, 1976.

The appellee has moved that we transfer the appeal to the Superior Court or that we quash it. It asserts as the ground for transfer that the dispute here grows out of an agreement between the parties—the stipulation upon which the court order of April 19, 1972 ending the first lawsuit was based. We disagree. The instant litigation is not founded on an agreement; it emanates from the events occurring after April 19, 1972 which the union says render any school board

resolution concerning residency requirements, including the modification of April 1972, unenforceable. Since this lawsuit essentially involves the enforceability of the school board's resolution of January 24, 1972, as modified by the order of April 19, 1972, it is a matter clearly committed to this court in its appellate jurisdiction. 42 Pa.C.S. §762(a)(4)(i)(B).

The union's motion to quash again has reference to the April 19, 1972 order. It points to the concluding paragraph of the order referring disputes as to the application, meaning or interpretation of the stipulation and order to Judge HIRSH and declaring that the judge's decision should be final and binding on the parties. The union contends that this commits all matters concerning the resolution, as modified, to common law arbitration, under the principles of which no appeal from the arbitrator can be had except on the basis of the denial of fair hearing or upon allegations of fraud, misconduct or other corrupt activity on the part of the arbitrator. There are two short answers to this contention. The first is that Section 16 of the Act of April 25, 1927, P.L. 381, *as amended,* 5 P.S. §176 provides that that Act shall apply to all written contracts to which the Commonwealth or any of its agencies or subdivisions is a party and shall be arbitrated under the terms of that Act. Under the Act of 1927 issues of law are reviewable. Therefore, even if the question raised in the instant litigation had been submitted to arbitration the decision of the arbitrator would be reviewable. The second short answer to the motion to quash is that the court below was not asked in the instant litigation to settle a dispute as to the application, meaning or interpretation of the order of April 19, 1972, entered in the first lawsuit or of any resolution referred to in that order; rather it was asked to enjoin, as to school district employees hired after February 1,

1972 and before May 12, 1976, the enforcement of any resolution requiring residence in the district. Furthermore, if the union, as it now says, was merely seeking arbitration under the April 19, 1972 order, it seems strange that it commenced a new lawsuit rather than merely submitting the matter for arbitration by an application entered in the first suit.

We dismiss the union's motions to transfer or quash the appeal.

We now come to the merits of the school board's appeal. The board first makes an extended argument to the point that laches and equitable estoppel are exclusively defenses to actions in equity and that neither can create a cause of action. Its authority for this proposition is the following sentence appearing in the case of *Pittsburgh v. Commercial Casualty Insurance Co.*, 106 Pa. Superior Ct. 254, 259, 161 A. 630, 631 (1932): "[A]n estoppel does not create a cause of action, and plaintiff must first show that it has a right to bring this suit." The case in question began as an action in assumpsit against a corporate surety by a materialman on a bond given by a contractor and the surety to the City of Pittsburgh. The materialman was not named as an obligee of the bond and for this reason the Superior Court held that he could not recover on the bond. The plaintiff contended, however, that the surety should be estopped from denying liability on the bond because of certain statutory references in the bond and because of the surety's acceptance of a special premium from the city. It was in answer to this argument based on estoppel that the opinion writer employed the quoted sentence. The opinion writer was saying that one suing on a bond must first show that he had a right to sue on the bond by its terms, a circumstance not there present. The instant case is quite different. Here the teachers by their union assert as

their cause of action their right to enjoin the school board from enforcing its resolution establishing residency requirements which the teachers say are unenforceable—that is, invalid as to them—because of school board actions constituting laches and equitable estoppel. An action for an injunction is clearly a proper means of testing the validity of municipal ordinances and regulations. *Harris-Walsh, Inc. v. Dickson City Borough,* 420 Pa. 259, 216 A.2d 329 (1966); *Kline v. City of Harrisburg,* 362 Pa. 438, 68 A.2d 182 (1949); *Appeal of City of Pittsburgh,* 115 Pa. 4, 7 A. 778 (1887). Nevertheless, the school board writes in its brief that "[n]owhere is there any concept in any case which sets forth the doctrine that laches can be averred as a proper basis for a cause of action rather than a defense to a cause of action" and at another place, that "[i]n no case is there any support for the idea that the doctrine of estoppel is anything other than a defense of a defendant's cause of action." To the contrary, our research has revealed the case of *Valley Railways v. City of Harrisburg,* 280 Pa. 385, 124 A. 644 (1924), where a street railway company brought an action to enjoin the enforcement of a city ordinance on the ground that the city had lost its right to question the railway company's use of the city's streets. The lower court upheld the ordinance which would have excluded the plaintiff's cars from the street. The Supreme Court reversed and directed the injunction to issue, declaring that "any right the city may have originally had to question the regularity of the company's use of Second Street has been lost by laches and acquiescence." 280 Pa. at 394, 124 A. at 647. In *Northwestern National Bank v. Commonwealth of Pennsylvania,* 345 Pa. 192, 27 A.2d 20 (1942), cited by the appellant for its definition of equitable estoppel, a bank filed a claim against the Commonwealth pursuant to

The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §1 et seq., asking the Department of the Auditor General to examine and adjust its claims against the Commonwealth on assigned accounts covering purchases of liquor by the Pennsylvania Liquor Control Board from one of the bank's customers. The bank contended that the Commonwealth should be estopped from asserting that the liquor described in the documents accompanying the assignments had not been delivered to the Commonwealth by reason of the Liquor Control Board's failure to notify the bank of the nondelivery of any liquor. While the Supreme Court concluded that the facts did not warrant the application of the doctrine of equitable estoppel, it did not question the propriety of the bank's claim based solely on the doctrine. The school board has directed our attention to the case *Piendak v. Local Board No. 5*, 318 F. Supp. 1393 (W.D. Pa. 1970), in which the Federal District Court held that a person subject to selective service may assert equitable estoppel as a grounds for enjoining an action of his local draft board. We hold therefore that laches and equitable estoppel will provide the basis for an action to enjoin the enforcement of a school board resolution.

We come finally to the question of the substantive merits of the chancellor's final decree enjoining the school board from enforcing its residency requirements. In this regard we observe that a chancellor's conclusions, whether of law or of ultimate fact, are no more than his reasoning from the underlying facts and are reviewable. *Shapiro v. Shapiro*, 424 Pa. 120, 224 A.2d 164 (1966). The chancellor's findings of fact, if supported by adequate evidence must be given great weight and may be rejected only in a clear case and for good reason. *Commonwealth Trust Company, Administrator v. Szabo*, 391 Pa. 272, 138 A.2d 85 (1957).

However, where the findings of fact of a chancellor are based on the testimony of witnesses he did not see or hear they are not entitled to the same weight; and in such a case, an appellate court is equally competent to form an opinion as to the effect properly to be given to such testimony. *Vajentic Estate,* 453 Pa. 1, 306 A.2d 300 (1973).

As we have already noted, the plaintiffs sought to prove their case not by the testimony of witnesses but by an affidavit of an associate of the law firm which represents the union. After reciting a background of the dispute, the affiant declares that he had read letters from employees sent to the union, that he had spoken to some of the employees by telephone, that the employees told him that they had asked persons in the school board's personnel department when they had applied for work concerning the board's residency requirements, and that these school board employees had told them that the residency requirement was a technicality, or a formality, or that it was not being enforced by the school board. The four concluding paragraphs of the affidavit are as follows:

10. The Federation has further been informed by these individuals that as a consequence of the assurances and statements made to them concerning the non-enforcement of the residency requirement, these employees have foregone other employment opportunities, have made investments in residences outside the city of Philadelphia, have enrolled their children in schools outside the city of Philadelphia and, in various other diverse ways, have taken actions in reliance upon statements and assurances that they would not be required to reside in the city of Philadelphia in order to retain their positions with the School District of Philadelphia.

11. Attached hereto is a summary of the experiences of approximately 75 employees to whom such statements had been made. The individual employees to whom these statements were made are available and will, if necessary, testify as to the facts contained in the summary attached hereto.

12. I have been further informed that officers and staff personnel of the Philadelphia Federation of Teachers were told by responsible School Board officials, including the former School Superintendent, that the residency requirement was not enforced by the Board and was not going to be enforced; and that these Federation officers and staff personnel thereafter reiterated these statements to employees of the Board of Education who are represented by the Federation in response to inquiries from these employees concerning the requirement.

13. I have also been informed that Leonard M. Sagot was told by responsible School Board officials on two different occasions in 1975 that the School Board was not enforcing the residency requirement and was not going to enforce same.

Attached to the affidavit is a list of names of asserted employees of the school board beside each of which appears a short paragraph asserted to be what each of the employees wrote or told the affiant concerning what agents of the school board had told them concerning the board's residency requirements. There are 77 names on the list and 77 statements, one containing the alleged statement of an employee and her husband. Our close analysis of this material reveals: (1) nine of the employees whose names appear on the list were employed by the school district before Feb-

ruary 1, 1972 and were not new future employees of the school board included within the terms of the school board's resolution of January 24, 1972 as modified by the stipulation and order of April 19, 1972; (2) except in five cases, the informants failed to identify the school board representatives with whom they spoke other than as "a secretary" or "a girl" or "a young lady" or "a clerk"; (3) only one of the 78 persons reporting said that he had been told (by an unidentified board employee) that the residency requirement would not be enforced in the future.

It was conceded by the school board that it did not seek to enforce the residency requirement until May of 1976. This was clearly because the case of *McCarthy v. Philadelphia Civil Service Commission, supra,* testing the constitutional validity of residency requirements, was pending in State courts and before the United States Supreme Court during most of this period. The board also adduced proof that it required persons employed after February 1, 1972, including most of the persons named in the affidavit, to execute a form acknowledging that the board's residency requirement had been made known to them and that it, the board, had included in job opportunities bulletins circulated by it a notice that persons working for the district would have to reside in the district in accordance with board resolutions. At the trial, the board called three of the five persons identified in the statements as board employees who made representations to union members concerning the residency requirements. The three called, all officers of the board, denied making the representations attributed to them— although one, the director of personnel, agreed that he may have told prospective employees that the board's residency policy was not then being enforced, a perfectly truthful statement of fact. These witnesses fur-

ther testified that they had instructed their people to obtain the written acknowledgment of the residency requirement from prospective employees.

The chancellor found that school board agents employed in the personnel department told persons hired after February 1, 1972 that the board's residency requirement was not being enforced, that these new employees relied on the statements made by personnel department people and that they would suffer physical, financial and emotional hardship if they were now required to comply with the residency requirement. The chancellor concluded that these facts supported the plaintiffs' contention that the school board had been guilty of laches prejudicial to the union's members and had committed acts which should cause it to be equitably estopped from now enforcing its residency resolutions.

Laches arises when a party's rights have been so prejudiced by the delay of another in pursuing a claim that it would be an injustice to permit the assertion of the claim against the party so prejudiced. *Grote Trust,* 390 Pa. 261, 135 A.2d 383 (1957). Equitable estoppel arises when a party by acts or representations, intentionally or through culpable negligence, induces another to believe that certain facts exist and such other relies and acts on such belief, so that the latter will be prejudiced if the former is permitted to deny the existence of such facts. *Northwestern National Bank v. Commonwealth, supra.* Here, laches would arise if the delay on the part of the school board in enforcing its residency requirements so prejudiced the plaintiffs' rights that it would be unjust to permit the board to enforce its resolutions. Equitable estoppel would arise if the school board, by its agents in the personnel department, made representations of facts, which were relied on by the plaintiffs, so that the latter

would be prejudiced if the representations were now to be repudiated.

It is well established that the burden rests on the party asserting equitable estoppel to establish such estoppel by clear, precise and unequivocal evidence. *Blofsen v. Cutaiar,* 460 Pa. 411, 333 A.2d 841 (1975). Consistently, the same rule should, and we hold does, apply to proof of laches. As reference to our description of, and the excerpts hereinbefore copied from, the affidavit offered as evidence of laches and estoppel demonstrate, the plaintiffs utterly failed to establish the necessary elements of laches or estoppel by clear, precise and unequivocal evidence. At the most, the whole record, including the testimony of school board personnel employees, could support a finding that some persons hired by the board after February 1, 1972 were told at the time of their job interviews that the board's residency requirement was not then being enforced. There is no clear, precise and unequivocal evidence that anyone was told that the policy would not be enforced in the future. At the same time, the record unequivocally establishes that most job applicants were required to acknowledge in writing that they were aware of the board's residency requirement. The difference between a statement that at present the residency requirement was not being enforced and a representation that the policy would never be enforced is plain. The plaintiffs' evidence on the subject of reliance consists solely of paragraph 10 of the affidavit which we have reproduced. This, it will be noted, says that unidentified persons connected with the union had been told by unidentified persons that they, relying on undescribed assurances, had given up other unspecified employment opportunities, bought residences somewhere outside the city, and enrolled their children in schools outside the city. There is nothing whatso-

ever in the affidavit or elsewhere in this record demonstrating any prejudice or harm to the plaintiffs by reason of their having purchased homes in the suburbs, or having not followed up job opportunities or having enrolled their children in suburban schools. For all that this record reveals they could have profited by buying a home outside the city, or might never actually have secured employment elsewhere, or could have disadvantaged rather than benefited their children by sending them to suburban schools. The record is also devoid of any proof tending to show that school board agents in the personnel department had any authority to make representations concerning school board policy present or future with respect to its residency requirement. The executive director of personnel for the school board testified that he had no power to authorize and had not authorized anyone working under him to declare board policy. Where the party against whom an estoppel is sought has acted through agents, the party seeking the estoppel bears the burden of proving that the agents were authorized to act as they did. *Fishman v. Davidson,* 369 Pa. 39, 85 A.2d 34 (1951).

The union contends, nevertheless, that new employees were misled because the board failed to warn them specifically that the residency requirement would be enforced in the future, if the outcome of the *Mc-Carthy* case warranted. It says, and the chancellor agreed, that the school board had a duty to explain its policy for the future. It is difficult to conceive of what the board could have done in this regard which would more effectively announce its intentions than its insistence that new employees acknowledge in writing their awareness of the board's policy. Enforcement of the residency requirement was to be expected; the residency policy was agreed to by the union in the stipu-

lation of April 19, 1972; and it was made known to new employees at the time of their hiring.

Paragraphs 12 and 13 of the affidavit relied on by the plaintiffs are not clear, precise and unequivocal proofs of the facts they contain. In paragraph 12, the affiant says that he has been informed by persons unnamed that unnamed officers and staff personnel of the union were told by unnamed school board officials that the board's residency requirement was not enforced and was not going to be enforced. In paragraph 13, the affiant says he was informed by another lawyer in his firm that he, the other lawyer, had been told by unnamed school board officials that the school board was not enforcing and was not going to enforce its residency requirements.

In short, there is no clear, precise and indubitable evidence on this record that any representation was made by anyone concerning future board policy with respect to the enforcement of its residency requirement; there is no evidence at all in the record that any employee of the board who allegedly made any representation was authorized to do so; there is no clear, precise or indubitable evidence that any person hired after February 1, 1972 relied on any representation made to him in this record; and finally, there is no evidence whatsoever in the record that anyone would be prejudiced or harmed in mind, spirit, body or estate by the board's enforcement of its residency requirement.

The final decree appealed from is reversed; and the complaint dismissed.

## ORDER

AND Now, this 16th day of February, 1979, the final decree entered March 11, 1977 is reversed and the complaint in this matter is dismissed.

DISSENTING OPINION BY JUDGE BLATT:

I must respectfully dissent.

Estoppel applies to fraud in the broadest sense which includes unintentional deception and it is not the intention of the party estopped which gives vitality to an estoppel but the natural effect upon the other party. *Department of Public Welfare v. UEC, Inc.,*[*] Pa.    ,    A.2d    (1979). There is no question that the doctrine of equitable estoppel can apply to a school district, *Smith v. Philadelphia School District,* 334 Pa. 197, 5 A.2d 535 (1939), and I believe that this doctrine is applicable here. Responsible officials of the School Board, including the former Superintendent of the School District, represented to the employes here concerned that the School Board was not enforcing the residency requirement and that it was not going to enforce that requirement. Under these circumstances I believe that the employes had every right to rely upon these representations.

I would also respectfully disagree that there is nothing in this record demonstrating any resultant harm to the employes by reason of their having relied on the assurances made to them. The harm done seems too obvious to me to require specific proof.

Judge DiSALLE joins in this dissent.

---

[*](34 May Term 1978, filed January 24, 1979)