Vincent Arena, Petitioner *v.* Workmen's Compensation Appeal Board (Packaging Systems Corp.), Respondents.

Argued September 10, 1984, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

554

*Michael J. Dowd, Dowd and Kocsis,* for petitioner.

*W. Marshall Dawsey, Griffin and Dawsey, P.C.,* for respondent.

OPINION BY JUDGE CRAIG, October 24, 1984:

Vincent Arena appeals from a decision of the Pennsylvania Workmen's Compensation Appeal Board, which affirmed a referee's decision denying Arena's disability claim petition. We must determine the applicable scope of review where a second referee has made findings on the basis of testimony taken before another referee, and whether the second referee properly found that Arena had failed to prove a compensable injury.

Arena worked twenty-one years for Packaging Systems Corporation; during the final ten years, he worked as a printer, and his duties included cleaning printing equipment and diluting ink, both of which required the use of the chemical solvents methyl ethyl ketone (MEK) and methyl iso-butyl ketone (MIBK).[1]

---

[1] The record indicates that Arena used methyl iso-butyl ketone, although the referee's findings did not mention that substance.

In 1972, Arena began seeing Dr. Falkenburg, an ear, nose and throat specialist, for recurrent sore throats, and nasal and sinus infections. Dr. Falkenburg suggested that Arena change jobs; however, a union contract apparently prevented Arena's transfer to a different position. Acting on Dr. Falkenburg's advice, Arena left his job on October 1, 1976.

Arena filed a disability claim petition, and Referee Kanjorski conducted hearings and received evidence. However, Referee Kanjorski retired before making a final decision, and the case was then assigned to Referee Peleak, who reached a decision based on the assembled record.

The referee concluded that Arena had failed to show that he suffered a work-related disability and therefore dismissed his claim petition. On Arena's appeal, the board affirmed, noting that a referee may choose to accept the testimony of one medical expert over that of another.

Arena contends here that, because the referee who made the decision on his claim did not actually take the evidence in the case, but based his decision on the record, the board and this court are not confined to their usual restricted inquiries.[2] Rather, he contends, the referee merely reviewed the compiled record, and the board and this court on appeal are equally able to

---

[2] Where the burdened party prevails before the referee, the board and this court on appeal are limited to a determination of whether or not constitutional rights were violated, an error of law was committed, or necessary findings of fact were unsupported by substantial evidence. *Armco Steel Corporation v. Workmen's Compensation Appeal Board*, 68 Pa. Commonwealth Ct. 118, 448 A.2d 673 (1982). Where the burdened party does not prevail before the referee, appellate review is limited to a determination of whether the referee committed an error of law or capriciously disregarded competent evidence. *Nucci v. Workmen's Compensation Appeal Board*, 70 Pa. Commonwealth Ct. 178, 452 A.2d 905 (1982).

engage in such review and make their own independent findings of fact and conclusions of law. The question is one of first impression in workers' compensation cases.

A referee's function is to make findings based on substantial evidence of record and draw legal conclusions from those findings, section 418 of the Act, 77 P.S. §833. In *Universal Cyclops Steel v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973), we interpreted the 1972 amendment to section 423 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §854, as placing squarely upon the referee the ultimate factfinding role in worker's compensation cases. The board, unless it chooses to hear additional evidence, and this court are confined to a limited reviewing function.

Arena has not pointed to any authority which supports his position that a substitute referee performs a function different from that of the initial referee, and similarly has supplied no support for the proposition that the board and this court should engage in independent factfinding.

Although *Vajentic Estate,* 453 Pa. 1, 306 A.2d 300 (1973) and *Board of Education of The School District of Philadelphia v. Philadelphia Federation of Teachers Local No. 3,* 40 Pa. Commonwealth Ct. 490, 397 A.2d 1273 (1979) held that an appellate court may engage in a de novo review of the record in equity cases, they are clearly inapposite here because the statutory provision of The Workmen's Compensation Act which guided our decision in *Universal Cyclops* is equally applicable in this case. We read section 423, as amended, to permit the board to disregard a referee's findings only where there is an absence of competent evidence to support them.

The Act also provides, in section 415, 77 P.S. §851, that the department may, at any time before a decision on a petition, reassign the petition to a second referee. This section further provides that "testimony taken before the original referee shall be considered as though taken before the board or substituted referee."

The plain language of section 415 clearly mandates that the role of a substitute referee as to evidence which the department has referred to him is the same as if he had taken it himself. Under *Universal Cyclops*, the referee is the ultimate finder of fact.

Thus, we conclude that the referee's power and the limited role of the board, and of this court as well, remain constant whether the referee himself presides over the creation of the evidentiary record or receives it through a department referral.

Arena also contends that the referee capriciously disregarded competent evidence in finding that he had not proved a work-related disability. We agree.

Before the referee, Arena bore the burden of demonstrating a compensable work-related disability. *Port Authority of Allegheny County v. Workmen's Compensation Appeal Board,* 73 Pa. Commonwealth Ct. 49, 457 A.2d 597 (1983). His expert witness was Dr. Falkenburg, who testified that, to a reasonable degree of medical certainty, Arena's exposure to MEK and MIBK at work caused, or at least aggravated, his condition of increased susceptibility to sinus and nasal infections. He further testified that Arena should never again expose himself to those chemicals, and therefore could not return to his former employment.

In rebuttal, the employer presented evidence from Doctors Ridell, Kaplan and Reams. Dr. Ridell testified, through deposition, that Arena did not have any infection when he examined him. Dr. Ridell quite

specifically stated that he had great regard for Dr. Falkenburg and that he did not question that Arena had suffered from sinus and nasal infections.

That testimony in no way contradicted Dr. Falkenburg's opinion that Arena suffered an increased susceptibility to infection; indeed, Dr. Ridell candidly stated that such an increased sensitivity is not visible through physical examination of the nasal membranes and that he would not have been able to detect it through his single examination.

Dr. Kaplan's examination report also failed to contradict Dr. Falkenburg's position. It merely indicated "normal findings" on the day of his examination and a tentative diagnosis of "vasomotor rhinitis", in concurrence with Dr. Falkenburg's own diagnosis. Dr. Kaplan declined to comment on whether exposure to chemicals caused Arena's problems, noting that he had advised Arena to see a specialist for such a determination.

Dr. Reams, the employer's third medical expert, had not examined Arena. His evidence consisted solely of a letter from the doctor to the employer's attorney, which advised the attorney that a review of the medical literature indicated that the chemical solvents involved here could cause nasal irritations and that such "effects are reversed by discontinuing exposure." He also stated that he would not "expect" Arena to suffer any long term problems related to the chemical exposure.

Dr. Reams, not having examined Arena, did not offer a medical opinion specifically based on Arena's physical condition and medical history. He simply reported what he had learned from the medical literature and offered his expectation for Arena's progress. That expectation, amounting to no more than mere speculation, does not rebut Dr. Falkenburg's deter-

mination that Arena did, in fact, suffer an increased susceptibility to infection.

Arena established, through Dr. Falkenburg's unequivocal medical testimony, that he suffered a work-related disability, and the employer's medical witnesses failed to rebut that evidence. Although the employer's witnesses did find that Arena did not have active infections during their examinations, none of them contradicted Dr. Falkenburg's opinion concerning the existence of Arena's increased susceptibility to infection or its relation to exposure to the solvents at work.

Because all the medical testimony was consistent on the issues of injury and causation, the case did not present an option to the referee to choose one medical expert's opinion over that of another. *Murray v. Workmen's Compensation Appeal Board,* 45 Pa. Commonwealth Ct. 3, 404 A.2d 765 (1979). The referee's rejection of the uncontradicted medical evidence and consequent determination that Arena did not suffer a work-related disability therefore constituted capricious disregard of competent evidence.[3]

Once Arena had established his work-related disability, the employer bore the burden of proving that other work was available. *Township of Warminster v. Workmen's Compensation Appeal Board,* 77 Pa. Commonwealth Ct. 155, 465 A.2d 708 (1983). Here the employer failed to meet that burden; therefore, Arena is entitled to an award for total disability. *Remmey Div., A.P. Green Refractories Co. v. Workmen's Com-*

---

[3] "A capricious disregard of evidence will be found when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Yanall v. Workmen's Compensation Appeal Board,* 69 Pa. Commonwealth Ct. 457, 451 A.2d 797 (1982).

*pensation Appeal Board,* 44 Pa. Commonwealth Ct. 1, 403 A.2d 172 (1979).

Accordingly, we reverse the decision of the board and remand for computation of benefits.

ORDER

Now, October 24, 1984, the decision of the Pennsylvania Workmen's Compensation Appeal Board, No. A-83244, dated September 29, 1983, is reversed, and the case is remanded to that board for computation of benefits.

Jurisdiction relinquished.