507 A.2d 18

**Vincent ARENA, Appellee,**

**v.**

**PACKAGING SYSTEMS CORP. and Workmen's Compensation Appeal Board, Appellants.**

Supreme Court of Pennsylvania.

Argued Dec. 5, 1985.

Decided March 20, 1986.

W. Marshall Dawsey, Towanda, for appellants.

Michael J. Dowd, John Kocsis, Athens, for Vincent Arena.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

In this matter we granted allocatur to address whether the Commonwealth Court employed the correct standard of review in reversing the decision of the Workmen's Compensation Appeal Board ("Board") which denied benefits to Vincent Arena ("appellee"). This matter arose on December 28, 1976 when appellee filed a claim for disability compensation pursuant to the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 1 *et seq.*, alleging that exposure to chemicals at his workplace, Packaging Systems Corporation ("PSC"), caused him "recurrent severe nose, sinus and throat infections and other problems with the upper and lower respiratory track" rendering him disabled as of October 1, 1976.[1]

1. Appellee sought compensation for an occupational disease as set forth under Section 301(c)(2) of the Workmen's Compensation Act, 77 P.S. § 411. This section provides:

(2) The terms "injury," "personal injury," and "injury arising in the course of his employment," as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this act: Provided, That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease: And provided further, That if the employe's compensable disability has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable. The provisions of this paragraph (2) shall apply only with respect to the disability or death of an employe which results in whole or in part from the employe's exposure to the hazard of occupational disease after June 30, 1973 in employment covered by The Pennsylvania Workmen's Compensation Act....

The relevant subsection of Section 108 of the Workmen's Compensation Act, 77 P.S. § 27.1, provides:

(n) All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population. For the purposes of this clause, partial loss of hearing

■ Following a hearing, at which the original referee assigned to this case [2] received evidence from appellee and various medical experts, a substituted referee ("referee") dismissed appellee's complaint on February 9, 1982, finding that appellee was not totally disabled from exposure to chemicals in his employment. In so concluding, the referee relied upon the opinions of three medical doctors.[3] Appellee appealed the referee's decision to the Board which, on September 29, 1983, affirmed on the ground that there was ample evidence to sustain the decision of the referee.

Upon appellee's appeal to the Commonwealth Court, that court reversed the Board holding that "[t]he referee's rejection of the uncontradicted medical evidence and consequent

in one or both ears due to noise; and the diseases silicosis, anthraco-silicosis and coal workers' pneumoconiosis resulting from employment in and around a coal mine, shall not be considered occupational diseases.

2. The first referee assigned to appellee's petition conducted the hearings and received the evidence, but retired before making a final decision. In the court below Arena contended that because the referee who made the decision on his claim did not actually take the evidence in the case, but instead based his decision only upon the record, the Board and reviewing courts are not confined to their usual scope of review. The Commonwealth Court correctly concluded that it is the referee who has the ultimate factfinding role in workmen's compensation cases, 77 P.S. §§ 833, 854. Deference is given to the referee's determination for two reasons: (1) generally it is the referee who observes the witnesses and who is in the best position to rule on the credibility of the witnesses; and (2) the referee, as well as the Board, deals exclusively with workmen's compensation cases and has developed expertise in the area. Even though the substitution of the second referee in this case may have removed the first reason for giving deference to the fact finding of the referee, the second basis for the principle of deference remains applicable and those findings must be accepted where the record reflects substantial evidence to sustain them.

Additionally, section 415 of the Workmen's Compensation Act, 77 P.S. § 851, provides that the Board may, at any time before a decision on a petition is made, reassign the petition to a second referee and that "testimony taken before the original referee shall be considered as though taken before the Board or substituted referee."

3. Specifically the referee stated in paragraph ten (10) of his findings of fact that he relied upon the opinions of Doctors Ridell, Reams and Kaplan. (R.23a) The opinions of each of these doctors will be discussed *infra* Section II.

determination that Arena did not suffer a work-related disability...constituted capricious disregard of competent evidence." *Arena v. Workmen's Compensation Appeal Board (Packaging Systems Corp.)*, 85 Pa.Commw. 553, 559, 483 A.2d 577, 580 (1984) (footnote omitted). The court also ruled that once appellee had established his work-related disability, the employer bore the burden of proving that other work was available. A timely appeal by the PSC and the Board ("appellants") was made to this Court pursuant to 42 Pa.C.S. § 724(a).

## I.

Appellants contend that the Commonwealth Court erred by substituting its own findings of fact for that of the referee. Alternatively, appellants contend that even if a work-related disability existed in the instant case, the employer met its burden of proving availability of other work when it offered a position to the claimant in an environment free of those fumes which occasioned the disability. We do not address appellant's alternative argument since we agree that the Commonwealth Court substituted its own judgment of fact for that of the referee.

In a workmen's compensation case, the claimant has the burden of establishing the right to compensation and all of the elements necessary to support an award. *Halaski v. Hilton Hotel*, 487 Pa. 313, 317, 409 A.2d 367, 369 (1979). On an appeal from a decision of the Workmen's Compensation Appeal Board taken by the party who had the burden of proof, the Board's findings of fact must be sustained unless they capriciously disregard competent evidence or unless they are inconsistent with each other or with either the Board's conclusions of law or its order. *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968). A capricious disregard of evidence will be found when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result. *Anderson v. Workmen's Compensation Appeal Board*, 80 Pa.

Commw. 253, 471 A.2d 112 (1984); *Mekunis v. Workmen's Compensation Appeal Board,* 62 Pa.Commw. 120, 435 A.2d 287 (1981); *Novak v. Workmen's Compensation Appeal Board,* 59 Pa.Commw. 596, 430 A.2d 703 (1981); *Senecal v. Workmen's Compensation Appeal Board,* 57 Pa. Commw. 180, 425 A.2d 1200 (1981); *Workmen's Compensation Appeal Board v. Pizzo,* 21 Pa.Commw. 370, 346 A.2d 588 (1975); *Foster Wheeler Corp. v. Workmen's Compensation Appeal Board,* 13 Pa.Commw. 45, 317 A.2d 922 (1974).

As we have stated before, it is not within the province of the reviewing court to make findings of fact, *Williams v. Spaulding Bakeries, Inc.,* 464 Pa. 29, 346 A.2d 3 (1975); *Dunn v. Merck & Co., Inc.,* 463 Pa. 441, 345 A.2d 601 (1975), but rather, the reviewing court must take as true the evidence and all reasonable inferences therefrom supporting the decisions of the Board, *Harman Coal Co. v. Dunmyre,* 474 Pa. 610, 379 A.2d 533 (1977); *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board,* 9 Pa.Commw. 176, 305 A.2d 757 (1973). Stated otherwise, the findings of fact of the Board are conclusive on appeal and the board will be reversed only if any finding of fact necessary to support its adjudication is not supported by substantial evidence. *See Workmen's Compensation Appeal Board v. Ira Berger and Sons,* 470 Pa. 239, 368 A.2d 282 (1977); *Symons v. National Electric Products, Inc.,* 414 Pa. 505, 200 A.2d 871 (1964); *Lipstok v. Haddock Mining Co.,* 353 Pa. 139, 44 A.2d 553 (1945).

## II.

Turning to the facts of the instant case, a review of the record reveals ample support for sustaining the Board's conclusion that the referee's findings of fact were supported by substantial evidence. At the time of the hearing on May 12, 1980, appellee was 47 years old and had been working for PSC since December 29, 1955. As of his last day of employment on October 1, 1976, appellee was working as a printer at PSC and had worked in that capacity for

the previous ten (10) years. As part of his job he was required to clean the printing presses with a chemical known as methyl ethyl ketone ("MEK"). He also worked with another chemical known as methyl isobutyl ketone ("MIBK"), but used MEK almost exclusively to clean the printing presses.

Appellee testified that he had started becoming ill on his job and that upon the advice of his doctor he left the job on October 1, 1976. Appellee stated that while he was at work, his sight would become blurry and he would have headaches, a dry throat and his tongue and lips would get numb and he would get dizzy. Appellee also stated that he had an infection and that anything he smelled, whether dust or dirt, would infect his nose. Appellee admitted, however, that he had had a sinus problem since his tonsils were removed approximately 28 years prior to the time of the hearing.

Frederick D. Willard, a plant manager for PSC, testified that PSC had offered to transfer appellee to another part of the plant where he would not have any exposure to MEK or MIBK; however, a union contract containing certain seniority rights made such transfer impossible. Mr. Willard also testified that appellee refused a job on the presses which did not require him to use MEK or MIBK because he would have been required to work nights.

Paul A. Gronka, an industrial hygiene engineer, performed air sample tests at PSC on May 8, 1977 and reported that the amount of MEK did not reach the threshold limits of danger as prescribed by the Office of Safety and Health Administration (OSHA). The OSHA threshold limit value for MEK is 200 parts per million ("p.p.m.") Mr. Gronka found that while cleaning the pump, an employee would be exposed to 26 p.p.m. when using MEK, and while washing the rollers with MEK, an employee would be exposed to 180 p.p.m. A general air sample at the plant taken for MEK showed a level of 7 p.p.m.

Dr. Carl York Falkenburg, an ear, nose and throat specialist, testified on behalf of appellee and stated that he

began treating appellee in 1972 for sore throats and chronic nose, sinus and throat infections. Dr. Falkenburg saw appellee numerous times thereafter in the years 1973 through 1976 for the same problem. Dr. Falkenburg concluded that the chemical solvents MEK and MIBK had something to do with appellee's condition or at least aggravated his problem, if not caused it. It was Dr. Falkenburg who advised appellee that he should discontinue his employment at PSC to avoid being exposed to the chemical solvents. However, even after appellee's exposure to these substances had terminated, he continued to have problems with his nose and throat area. Dr. Falkenburg could not explain why appellee continued to suffer these problems although he was no longer exposed to the chemical solvents.

Dr. Falkenburg further testified that appellee was able to work at regular employment as a printer or in some other job in the absence of chemical solvents, and that he was capable of working as of January or February of 1977. On cross-examination, Dr. Falkenburg stated that appellee's problem was caused by allergies resulting from many things. In Dr. Falkenburg's opinion, appellee was only totally disabled temporarily.

Dr. Earl Ridell examined appellee on September 15, 1978 and found that appellee was suffering from a boil and an infection of the hair follicles. Dr. Ridell treated appellee with penicillin and hot compresses and saw him again on September 18, 1978, at which time the boil had subsided and the infection was being controlled. In his full examination of appellee, Dr. Ridell found nothing abnormal about appellee's nose, sinus, throat (including no signs of rhinitis or sinusitis) and that there was nothing to prevent appellee from working. Dr. Ridell's examination showed no permanent damage to appellee's nose or throat area and Dr. Ridell testified that if appellee had permanent damage from chemical solvents or any allergy, such damage would have been revealed in the examination. Dr. Ridell further testified that if appellee's sinus, nose and throat were irritated by chemical solvents, this irritation would clear up after the

exposure stopped. Dr. Ridell thus concluded that appellee was not totally disabled.

Dr. Gary Lage, a professor of toxicology at the Philadelphia College of Pharmacy, testified that MEK and MIBK are irritants to mucous membranes, but that he had never done any lab experiments on humans involving these chemicals. Dr. Lage stated that there is very little knowledge available about chronic exposure to MEK or MIBK.

Two (2) reports were submitted by stipulation from the Geisinger Medical Center. Both the reports of Dr. David Kaplan and Dr. Carl Reams, who examined the claimant on March 13, 1978, found appellee to be perfectly normal. However, Dr. Reams noted after consulting with other physicians and medical literature that if there had been irritation due to an exposure to MEK, the irritation would reverse or dissipate once appellee was removed from the environment.

We believe that the referee's reliance upon the testimony and statements of Doctors Ridell, Kaplan and Reams in concluding that appellee was not totally disabled did not amount to a willful disregard of the competent evidence presented by appellee's expert, Dr. Falkenburg. The latter testified that appellee's exposure to MEK and MIBK either had "something to do with" appellee's condition, "aggravated" his condition, or "caused" his condition. His testimony concerning the extent of the causal connection was clearly equivocal. On cross-examination, he admitted appellee had many allergies that may have caused some of the problems. Moreover, he could not explain why appellee continued to have problems with his nose and throat area even after his exposure had ceased. It is axiomatic that a complainant does not carry his burden by offering equivocal medical testimony to establish that the claimed disability resulted from the workplace environment. *See, e.g., Lewis v. Commonwealth, Workmen's Compensation Appeal Board,* 508 Pa. 360, 498 A.2d 800 (1985); *Mohler v. Cook,* 205 Pa.Super. 232, 209 A.2d 7 (1965); *Simons v. Workmen's Compensation Appeal Board,* 52 Pa.Commw. 575, 415 A.2d 1290

(1980); *McPhillips v. School District of Philadelphia,* 40 Pa.Commw. 204, 396 A.2d 922 (1979); *Ricciardi v. Workmen's Compensation Appeal Board,* 34 Pa.Commw. 316, 383 A.2d 571 (1978).

We thus conclude that appellee did not sustain his burden of proving a work-related disability.[4] Accordingly, we reverse the order of the Commonwealth Court and reinstate the order of the Workmen's Compensation Appeal Board.

ZAPPALA, J., concurs in the result.

LARSEN, J., dissents on the basis of the Commonwealth Court opinion authored by Judge CRAIG, *Arena v. Workmen's Compensation Appeal Board (Packaging Systems Corp.),* 85 Pa.Commw. 553, 483 A.2d 577 (1984).

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the Order of the Commonwealth Court is reversed and the Order of the Workmen's Compensation Appeal Board is reinstated.

---

4. In view of our disposition, we need not consider whether appellee proved he suffered from an occupational disease as defined under Section 108(n) of the Act, *supra* n. 2, nor need we reach the issue of whether or not the record establishes the availability of other suitable employment.