513 A.2d 1147

Betty L. Hish, Petitioner *v.* Workmen's Compensation Appeal Board (Mayview State Hospital), Respondents.

Argued March 11, 1986, before Judges MACPHAIL, DOYLE and BARRY, sitting as a panel of three.

*Douglas W. Reed, Berger and Reed,* for petitioner.

*Paul J. Dufallo,* Assistant Chief Counsel, with him, *Catherine A. Blue,* for respondents.

OPINION BY JUDGE BARRY, August 18, 1986:

This is an appeal by claimant, Betty L. Hish, of an order of the Workmen's Compensation Appeal Board affirming a referee's decision to dismiss her claim petition on the basis that she failed to prove that her mental illness was work-related.[1]

Claimant was employed as a psychiatric nurse at Mayview State Hospital from 1969 until July 10, 1979, when she was discharged. She took a medical leave of absence from December 27, 1978, until April 1, 1979, for treatment of psychiatric problems.[2] Claimant filed a

---

[1] Section 301(c)(1) of the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411(1) reads, in relevant part:

> (1) The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury;
>
> . . . .

[2] The referee's Finding of Fact No. 7 sets forth the following in regard to his findings relative to claimant's disability:

> The claimant had been on a medical leave of absence from December 27, 1978 to April 1, 1979 for psychiatric problems. At page 30 of his deposition, Dr. Hornicek testified that his diagnosis as of February 14, 1979 was 'difficult situation reaction related to family problems associated with depressive neurosis, borderline E.E.G. under evaluation.'

claim petition on March 3, 1980, claiming that she suffered a borderline psychiatric disorder as a result of her negative experiences with her supervisor, thus entitling her to workmen's compensation benefits for a work-related, stress-induced psychological injury which occurred from July 10, 1979 to an undetermined time in late fall or winter (of 1981).[3] Claimant worked under this supervisor from 1975 until the date of her discharge.

The referee made the following relevant factual findings:

> 8. The claimant had had problems relating to her work performance since 1975. These included, *inter alia,* excessive absenteeism, failure to report a serious physiological change in a patient who later died, poor supervisory skills, incomplete documentation of medication, leaving a medication area unlocked, charting bizarre information in clinical records, leaving a patient unattended in a locked ward, administering medication without a doctor's order, failing to note an injection to a patient, and failing to notify the physician of a drastic change in the condition of a diabetic patient. These errors led to her dismissal on July 10, 1979.

> 9. The claimant's supervisor and union representative testified regarding problems with her professional performance and the coordinator's handling of these problems. They stated that the claimant was afforded special treatment in that she was given more opportunities than would normally be allowed to improve her perform-

---

[3] Although we are unable to pinpoint exactly the termination date of claimant's disability we note that the referee's Finding of Fact No. 6 states that the disability extended until the late fall or early winter of 1981.

ance. They stated that the handling of the claimant's disciplinary problems by the coordinator was compassionate and appropriate to someone with a mental illness. They also stated that the coordinator did not work directly with the claimant on a daily basis, and that their contact occurred only when the above problems were reported to her, and it was necessary to take disciplinary action.

10. The claimant, in letters dated April 3, 1977 and February 24, 1979, expressed satisfaction with her job as a nurse in the Admission and Treatment Service and objected to a suggestion that her assignment might be changed to another building. In her letter of February 24, 1979, she indicated that the leave of absence granted by Mayview in early 1979 was necessary to deal with severe family problems.

11. The defendant presented by deposition the testimony of Dr. Howard Finkelhor. It was Dr. Finkelhor's opinion that the claimant suffered from a personality disorder of long standing duration. It was also his opinion that her job at Mayview did not cause her personality disorder.

12. *Inter alia,* the claimant testified in her own behalf and introduced the written reports of George H. Gray, Jr., M.D., Lowell G. Lubic, M.D., Thomas M. Eberle, a psychologist and the written report and deposition of Francis J. Hornicek, M.D.

13. *Inter alia,* the defendant introduced copies of letters written by the claimant and the deposition of Howard Finkelhor, a psychiatrist. (The claimant also introduced a copy of Dr.

Finkelhor's deposition transcript although Dr. Finkelhor was called as defendant's witness.)

14. Dr. Hornicek, a psychiatrist, testified for the claimant.

He has treated the claimant since 1972.

The claimant had considerable family problems when he first saw her.

In 1978 she told him of problems at work.

His opinion was that 'when she left Mayview it has not been proven that the events alleged to have happened did really occur.'

He also stated that, while he only knew in a very general way what her duties were at Mayview 'because they never came up as an issue', he felt that her criticisms were genuine.

15. He saw the claimant on May 5, 1981 and his diagnosis was personality disorder.

His opinion was that there was no causal relationship between the claimant's employment and her condition. He stated that she could perform the duties of her job.

16. After a review of the whole record, we accept the testimony of Dr. Finkelhor as the more credible, and find accordingly.

The referee concluded that, although she truly was disabled, her disability was not work-related; thus she was ineligible for benefits. The Board deferred to the referee's resolution of the conflict in testimony between Dr. Finkelhor and Dr. Francis Hornicek, adopted the referee's findings and affirmed his decision. On appeal to this Court, claimant argues that she is entitled to benefits since Dr. Hornicek testified competently and unequivocally that she was disabled because of a compensable psychological injury. She bases her contention that her injury is compensable on her assertion that it was caused by work-related stress and that she is not

precluded from receiving benefits because she had a pre-existing vulnerability to this stress. She also maintains that the referee erred in relying on the testimony of Dr. Finkelhor, claiming that his less than one hour interview and reliance on employer's records rendered his testimony incompetent.

Our scope of review when the claimant, possessing the burden of proving a compensable injury under the Act, has not prevailed before the Board, is limited to determining whether the findings of fact are consistent with each other and the conclusions of law and whether there was a capricious disregard of competent evidence. The party which prevailed before the Board is entitled to the benefit of the more favorable inferences to be drawn from the evidence presented. *Isadore v. Workmen's Compensation Appeal Board (Owens-Illinois)*, 77 Pa. Commonwealth Ct. 346, 465 A.2d 1096 (1983). The burden of proving a compensable injury under the Workmen's Compensation Act is on the claimant. *Arena v. Workmen's Compensation Appeal Board (Packaging Systems Corp.)*, 85 Pa. Commonwealth Ct. 553, 483 A.2d 577 (1984), *rev'd on other grounds*, 510 Pa. 34, 507 A.2d 18 (1986).

Here, the referee ruled that, although claimant was truly disabled, she failed to prove that she sustained this psychological injury in the course of her employment. He relied on the testimony of employer's medical expert, Dr. Finkelhor, while rejecting the medical opinion of Dr. Hornicek that the disability occurred as a result of claimant's cumulative negative experiences with her supervisor from 1975 until the date of her discharge. The referee's Finding of Fact No. 11 accepted Dr. Finkelhor's opinion that the claimant suffered from a personality disorder of long standing duration, and that her job at Mayview did not cause her personality disorder. It is well established that in a workmen's com-

pensation case when a conflict in medical testimony exists, questions of credibility and resolutions of evidentiary conflicts are for the referee. *Stegmaier Brewing Company v. Workmen's Compensation Appeal Board,* 50 Pa. Commonwealth Ct. 241, 412 A.2d 697 (1980). The fact that Dr. Hornicek's testimony was unequivocal does not obligate the referee to accept it. The referee's disregard of this testimony in favor of that of Dr. Finkelhor is not capricious disregard of evidence. *Snyder v. Workmen's Compensation Appeal Board,* 50 Pa. Commonwealth Ct. 227, 412 A.2d 694 (1980). The referee is free to accept the testimony of a doctor who examined claimant only once as opposed to her personal physician who treated her over a long period of time. *Id.* at 231, 412 A.2d at 696.

In *Thomas v. Workmen's Compensation Appeal Board,* 55 Pa. Commonwealth Ct. 449, 423 A.2d 784 (1980), we said that due to the highly subjective nature of psychological injuries the work-related cause must be adequately pinpointed. Contrary to claimant's argument, we believe *Thomas* is applicable to this case. We note that the referee in his Finding of Fact No. 14 points out that Dr. Hornicek, although claimant's treating physician for many years, testified that he was generally unfamiliar with the condition of claimant's work environment. His testimony, therefore, could easily be challenged. In *Snyder* we said that "[i]n order to find that the referee capriciously disregarded competent evidence in rendering his decision, we must determine that he wilfully and deliberately disbelieved an apparently trustworthy witness whose testimony one of ordinary intelligence could not possibly challenge." *Snyder,* 50 Pa. Commonwealth Ct. at 229, 412 A.2d at 695. We, therefore, must conclude that the referee's acceptance of Dr. Finkelhor's testimony over Dr. Hornicek's is not capricious disregard of competent evidence.

We reject claimant's contention that because Dr. Finkelhor testified that it is within the realm of medical possibility that claimant suffered a reactive psychotic episode at work that Dr. Finkelhor's testimony is incompetent. In examining the medical testimony we must view it in its entirety. Dr. Finklehor's testimony taken as a whole clearly stands for the lack of causal connection between claimant's disability and her employment.[4] *See Sears, Roebuck & Company v. Workmen's Compensation Appeal Board,* 48 Pa. Commonwealth Ct. 161, 409 A.2d 486 (1979).

Accordingly, we affirm.

## ORDER

Now, August 18, 1986, the order of the Workmen's Compensation Appeal Board, dated January 19, 1984, at No. A-84942, affirming the referee's decision to deny benefits to claimant, is affirmed.

---

[4] For an article reviewing the mental disability cases which have been decided by this Court since *Thomas,* see Comment, *Mental Stimulus Causing Mental Disability: Compensability Under the Pennsylvania Workmen's Compensation Act,* 23 Duq. L. Rev. 375 (1985).