Commonwealth of Pennsylvania, Department of Revenue, Bureau of Sales and Use Tax, Appellant v. King Crown Corporation and King Crown Corporation, t/a Mt. Haven Cottage and Restaurant, Inc., Appellees.

Argued April 7, 1980, before Judges BLATT, CRAIG and WILLIAMS, JR., sitting as a panel of three.

*Walter T. Grabowski,* Assistant Attorney General, for appellant.

*Warren D. Utermahlen, Krawitz & Ridley,* P.C., for appellees.

OPINION BY JUDGE CRAIG, June 11, 1980:

The Department of Revenue, Bureau of Sales and Use Tax (the Commonwealth) appeals from the order of the Court of Common Pleas of Pike County, which granted the petition of King Crown Corporation (King) to strike and set aside all writs and execution process issued upon several assessments and liens against certain of King's property for sales and use tax liability. We will affirm in part but are of the opinion that a remand is necessary to conclude the matter.

King's petition to the court below requested relief from executions based on tax liabilities covered by a "compromise agreement." This agreement, alleged to be a "compromise settlement for all sales taxes assessed through [September 22, 1977]," was evidenced by a letter of that date, from an assistant attorney general of the Commonwealth which stated:

Per our discussions regarding the above referenced account, please be advised that the

Commonwealth of Pennsylvania accepts your settlement proposal of $30,000.00 inclusive of interest for the payments of delinquent Sales Taxes.

Accordingly, based upon your 1972 income tax report and conversations with Mr. Edwards, I am satisfied that the assessment as originally made was in error and should be adjusted.

As you stated, the debt now is $30,000.00, payable over a 12 year period, at $200.00 per month. Note that payment of this account has no bearing on Sales Taxes presently being assessed and thus you must pay currently on both. Should you default in any way, this agreement will be revoked and new terms instituted.

Your checks should be made payable to the Commonwealth of Pennsylvania, sent to the address above and marked for Ms. Walsh's attention. Should you have any questions, use the number provided above.

I trust your business is successful and greatly appreciate your cooperation in this regard.

The Commonwealth's answer admitted that King had made monthly $200 payments as described in that letter, but denied that that letter constituted a valid compromise and settlement agreement with regard to any delinquent taxes, because it was not approved by the Chief, Commonwealth Collections Division, nor was it properly documented in the Commonwealth file. The Commonwealth argues that those omissions render the alleged agreement null and void, in view of the requirements of 37 Pa. Code §§131.11, 131.23, which regulations provide, respectively, that:

No compromise or writeoff of a claim due the Commonwealth may be approved unless there

appears in the file of the case documentation, in the form of memoranda or investigation reports, verifying or controverting some or all of the facts relevant to the claim. If no such documentation is present, the file shall contain a memorandum explaining why such information is not available. 37 Pa. Code §131.11.

If the amount of money which is to be compromised or written off is not in excess of $50,000, and if the file contains the documentation required by the provisions of this chapter, approval may be granted by the Chief, Commonwealth Collections Division. 37 Pa. Code §131.23.

The Commonwealth further argues that it notified King of the invalidity of the alleged agreement by letter of May 19, 1978 from the Chief, Commonwealth Collections, which stated that "the proposed compromise was never approved by me and no compromise/settlement memorandum was ever sent to you''; additionally, the Commonwealth presented its letters of June 20 and August 28, 1978, which delineated the Commonwealth's position and referred to the above regulations.

The lower court's opinion stated that:

Ordinarily, our inclination would be to accept this [the Commonwealth's] proposition. However, the equities, or perhaps more correctly, the *inequities,* of the instant situation, are such that we cannot.

The real issue before us in this matter is that of estoppel. The facts demonstrates that a letter was sent to the Defendant under the signature of an Assistant Attorney General, informing it that a compromise had been accepted, and delineating the machinery for payment pursuant thereto. Thereafter, payments were in

fact made, thirteen in number, several of these after the date of the letter which the Commonwealth now relies on by way of repudiation was sent to Defendant.

Under this factual situation, we believe it would be unconscionable to allow the Commonwealth to act as it did, and we are shocked at the slipshod procedures utilized by the Commonwealth within. There exists no question in our mind that the Assistant Attorney General was cloaked with apparent authority to act in this matter, despite the regulations to the contrary. This factor coupled with the acceptance of payments, is in our opinion more than sufficient to create an estoppel against the Commonwealth to take the actions of this case. (Emphasis in original.)

The pivotal issue in this appeal, then, is whether the Commonwealth is estopped from repudiating the letter agreement.

The historical reluctance of courts to subject the Commonwealth or its subdivisions to the operation of estoppels has not been without exception. *See Ervin v. Pittsburgh,* 339 Pa. 241, 14 A.2d 297 (1940). However, that reluctance is diminishing, particularly because the "grounds generally advanced for this reluctance bear striking similarity to those offered in support of the doctrine of sovereign immunity," *Department of Public Welfare v. UEC, Inc.,* 483 Pa. 503, 514, 397 A.2d 779, 785 (1979), a doctrine which has recently been discarded as "unfair and unsuited to the times," *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 386, 388 A.2d 709, 710 (1978). Even before these decisions, our Supreme Court had upheld estoppel against municipal governments, *Ervin, supra,* and estoppel by laches even against the Commonwealth, *Commonwealth ex rel. Margiotti v. Union Traction*

*Co. of Philadelphia,* 327 Pa. 497, 194 A. 661 (1937). More recently, in *UEC, Inc., supra,* the Supreme Court applied estoppel against the Commonwealth to prevent defensive use of a statute of limitation.

Equitable estoppel is a doctrine of fundamental fairness, dependent on the particular facts of each case; it arises when "a party, by acts or representations intentionally or through culpable negligence, induces another to believe that certain facts exist and such other relies and acts on such belief, so that the latter will be prejudiced if the former is permitted to deny the existence of such facts." *Board of Education v. Philadelphia Federation of Teachers Local No. 3,* 40 Pa. Commonwealth Ct. 490, 506, 397 A.2d 1273, 1280 (1979).

Estoppel here thus depends on the reasonableness of King's belief that a settlement had been agreed upon, and the existence of intent or "culpable negligence" on the part of the Commonwealth's agent in creating that belief.

To reach an answer, we find a discussion in *UEC, Inc., supra,* helpful. Although addressed to the distinct situation of estoppel against reliance upon a statute of limitations, which requires fraud or concealment by the party to be estopped, the interpretation placed on those words is illuminating. That rule was held.

> not [to] mean fraud or concealment in 'the strictest sense encompassing an intent to deceive, but rather fraud in the broadest sense which includes an unintentional deception . . . (citation omitted). It is not the intention of the party estopped but the natural effect upon the other party which gives vitality to an estoppel.' Nesbitt v. Erie Coach Co., supra, 416 Pa. at 96, 204 A.2d at 476-77.

*UEC, Inc., supra,* 483 Pa. at 513, 397 A.2d at 784.

Accordingly, we find that intent or "culpable negligence" must be accorded a similarly broad meaning.

The estoppel herein emanates from the above-quoted letter of the Assistant Attorney General and the record evidence of the underlying transaction. A Mr. Filone, an officer of King, testified that, at a September, 1977 meeting with the assistant attorney general in his Harrisburg offices, the assistant attorney general informed him that "[h]e couldn't make a decision on this and he told me that he would get back to us within a week. That [the proposed settlement] had to be presented, to bring it up in front of someone else." Mr. Filone testified to receipt of the quoted letter about a week after that meeting.

A Mr. Edwards, King's retained CPA, testified that he spoke by telephone with the assistant attorney general with regard to the tax liability, the settlement, and the payment mechanism thereunder; the accountant's testimony was entirely consistent with that of King's officer.

Under these facts, we agree and find that estoppel is appropriate to preclude the Commonwealth from denying the validity of the compromise, and likewise from repudiating the agreement. We cannot consider only the authority, actual or apparent, of the assistant attorney general to compromise the liability; the letter relied upon by King does not appear to us to announce the assistant attorney general's decision, but simply to communicate the Commonwealth's acceptance of the settlement. That correspondence is consistent with a belief that the assistant attorney general had in fact secured the proper approvals, and was informing King of the Commonwealth's decision, as an outcome of the internal relations of the assistant attorney and the chief.

The quoted regulations, urged by the Commonwealth, do not directly control the question. Clearly

they do address the hierarchy of authority in the settlement of claims; however, the regulations do not by their terms preclude a further delegation of that authority, or, more precisely, delegation of authority to communicate the Commonwealth's decision.

We find that King's belief, that a valid compromise had been agreed upon, is fully reasonable; it is similarly reasonable for King to have believed, from the letter, that the necessary approvals had been secured and the documentation requirement fulfilled. The files of the Commonwealth in this regard are maintained and controlled by the Commonwealth's agents; nothing in the record before us would indicate that King should have believed other than what the letter said: that the compromise had been accepted. King had dealt with this officer of the Commonwealth extensively through the dispute; nothing would give rise to suspicion that he acted outside his apparent authority in communicating the Commonwealth's acceptance.

However, as we have intimated, our holding against the Commonwealth on the estoppel issue does not fully resolve the dispute. As noted above, King requested relief from execution for taxes *covered by the compromise agreement.* King alleged that that agreement settled all sales taxes *assessed* through the date of the assistant attorney general's letter. The Commonwealth expressly denied King's alleged agreement and further alleged King's failure to pay other taxes, not subject to the alleged agreement, which had been assessed by or about September 22, 1977.

Our approval of estoppel against the Commonwealth leaves these material questions of the scope of the compromise unanswered. These questions are material because estoppel merely prevents denial of the agreement; it does not obviate the necessity of inter-

pretation, upon which question the court below has made no findings.

Without such interpretive findings we cannot decide the rectitude of the lower court's striking and setting aside of *all* the writs of execution incorporated in King's petition. From the record before us we are unable to discern which delinquent assessments were in fact subject to the agreement and which were not, and thus which writs of execution should or should not have been stayed or set aside.

Additionally the Commonwealth contends that the compromise agreement was made conditional on King's keeping current on tax assessments not covered by the agreement and all those accruing after the agreement. The contention is that King has failed to keep current in its tax liabilities and has thus breached the compromise agreement, such that the Commonwealth might repudiate on this basis. Again, without proper interpretive findings, this question is beyond our capacity to resolve at this juncture.

Therefore we will affirm the lower court's order to the extent indicated and remand the case for such further consistent proceedings as may be necessary.

ORDER

AND Now, this 11th day of June, 1980, the order of the Court of Common Pleas of Pike County at Nos.:

J 32 March Term, 1977
J 33 March Term, 1977
J 343 May Term, 1977
J 360 September Term, 1977
J 66 March Term, 1976
J 275 March Term, 1975

is affirmed to the extent indicated in our opinion in this matter, and the case is otherwise remanded to that court for such further proceedings and modification, consistent with this opinion, as may be necessary.