Commonwealth of Pennsylvania, Department of Transportation, Appellant *v.* Limestone Products & Supply Company, Appellee.

Argued October 7, 1982, before Judges BLATT, CRAIG and MACPHAIL, sitting as a panel of three.

*Michael J. Creighton,* Assistant Counsel, with him *Ward T. Williams,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellant.

*William P. Bresnahan, O'Donnell, Bresnahan & Caputo,* for appellee.

OPINION BY JUDGE CRAIG, February 28, 1983:

The Pennsylvania Department of Transportation (DOT) appeals here from an order of the Court of Common Pleas of Allegheny County enforcing a settlement agreement between the Commonwealth and Limestone Products & Supply Company (Limestone). We affirm.[1]

This case began with DOT's condemnation of Limestone's property on August 17, 1971. When the Allegheny County Board of Viewers filed its report in January, 1978, estimating the damages caused by the condemnation at $60,000, the Commonwealth appealed. When the appeal was scheduled for trial and a jury had been selected, there were negotiations be-

---

[1] This case was reassigned to the writer February 7, 1983.

tween the two parties, and Limestone now relies upon a settlement agreement then reached in Judge SCHEIB's chambers on October 6, 1980. DOT, however, has refused to honor the settlement agreement, arguing that its trial attorney had neither express nor implied authority to settle the case and therefore, that no settlement occurred. After a hearing on Limestone's petition for rule to show cause why the settlement agreement should not be enforced, Judge SCHEIB ordered that the agreement be enforced in all its terms.

Limestone argues that, because the DOT attorney testified before the trial court that the regular DOT practice with regard to settlements was for the attorney concerned to receive oral authority to settle, and that he had received such authority, a valid settlement agreement had been reached and should be enforced. Judge SCHEIB, agreeing with Limestone's position, found as a fact that the parties did enter into a settlement agreement on October 6, 1980, and concluded as a matter of law that the agreement was enforceable.

The procedure for settling claims against the Department of Transportation is set forth in 37 Pa. Code §141.33, which provides in pertinent part:

> Before any claim may be settled or terminated, the Legal Bureau shall be required to consult with the Bureau of Right-of-Way, in accordance with the procedures set forth in Chapter XV of the Right-of-Way Manual, Department of Transportation, as approved by the Federal Highway Administration. In claims handled by trial attorneys assigned to the Legal Bureau, the following authorization to make settlement is established:
>
> . . . .

(2) In claims in which the amount of the settlement exceeds $25,000, but does not exceed $50,000, the settlement may be made by the Assistant Regional Attorney for Trials.

(3) In claims in which the amount of the settlement exceeds $50,000, but does not exceed $100,000, the settlement may be made by the Regional Attorney.

Here, with the settlement involving more than $50,000, the trial attorney for DOT admitted that he contacted the *Assistant* Regional Attorney for Trials for approval, without making any direct contact with the Regional Attorney.

However, when a jury has been selected and is waiting in an eminent domain case, and the Commonwealth's attorney, present and functioning as an officer of the court, then and there enters into a settlement agreement after checking with departmental headquarters, we cannot permit the Commonwealth to repudiate that settlement on the basis that · the Commonwealth's own attorney did not check far enough up in the official hierarchy. Practice experience with the time pressures involved in processing jury trials, particularly in a busy metropolitan county, establishes that a condemnee's attorney cannot possibly assume what is rightly the Commonwealth's burden—making sure that its own officials follow the internal procedures prescribed for them. Indeed, in this case, where the Commonwealth's trial attorney received approval from the Assistant Regional Attorney in Harrisburg, the trial attorney could logically expect that, in conveying that approval, the Assistant Regional Attorney was speaking for the Regional Attorney whom he is supposed to assist.

In accordance with the principles we stated in *Department of Revenue v. King Crown Corp.*, 52 Pa.

Commonwealth Ct. 156, 415 A.2d 927 (1980), we must consider the Commonwealth estopped from repudiating the settlement. This case, settled with a jury in the box, presents a stronger case than the out-of-court negotiations in *King Crown*. Here the exigencies of the jury trial situation presented greater difficulty with respect to scrutinizing the apparent authority of the trial lawyer, and, in fact, the reliance of the property owner—and the court as well—was plainly embodied in the termination of trial on the faith of the settlement.

*Central Storage & Transfer Co. v. Kaplan,* 487 Pa. 485, 410 A.2d 292 (1979), on which the Commonwealth relies, has no applicability to the matter of the authority of an attorney to represent the Commonwealth in court. The *Central Storage* case involved discussions and negotiations by warehouse owners with the Pennsylvania Liquor Control Board over a period of a number of months, during which the warehouse operators had ample opportunity to inform themselves with respect to the statutory contracting powers of the board. To hold that persons contracting with a governmental agency must, at their peril, know the extent of the power of the state government officers in that situation is a sound rule, as reiterated in *Central Storage.* However, it is quite different to hold that parties act at their peril in negotiating a settlement in court with the Commonwealth's attorney of record.

This case is also different from *School District of Philadelphia v. Framlau Corp.,* 15 Pa. Commonwealth Ct. 621, 328 A.2d 866 (1974), where confirmation of the court settlement clearly was known to be conditioned upon formal subsequent action of the school board, a governing body distinct from the hierarchy of legal counsel.

*L & A Creative Art Studio, Inc. v. Redevelopment Authority of the City of Philadelphia,* 35 Pa. Commonwealth Ct. 271, 385 A.2d 1045 (1978) is also distinguishable because, like *Central Storage,* it was an out-of-court settlement, which, as in *Framlau,* clearly hinged upon formal action by the client public body, not just counsel's confirmation of approval as here.

If we were to let the Commonwealth repudiate the actions of its trial lawyer on the basis that the assistant supervisor did not check with his supervisor, we would thereby discourage future opposing counsel from engaging in settlement, a process favored as a matter of policy. Certainly, if the Commonwealth had lost the case by a jury verdict, the Commonwealth could not have thereafter denied the authority of the particular trial attorney to conduct that trial, and thus gain a retrial, on the basis of a regulation providing that cases of such scope were beyond that trial lawyer's allowable assignments. The settlement of a case in the presence of the court should be no less final.

This court, remote from the pressures and problems of managing a busy jury trial docket, should not disturb the sound determination of Judge SCHEIB, who was on the scene and should therefore be affirmed.

ORDER

Now, February 28, 1983, the order of the Court of Common Pleas of Allegheny County is affirmed.

---

DISSENTING OPINION BY JUDGE BLATT:

I must respectfully dissent.

I believe that the crucial issue here is whether or not the DOT's trial attorney had authority to enter into the settlement agreement and, thus, whether or

not a valid settlement agreement ever existed. Furthermore, I believe that this very issue was identified as being dispositive in the case of *L & A Creative Art Studio, Inc. v. Redevelopment Authority,* 35 Pa. Commonwealth Ct. 271, 385 A.2d 1045 (1978), a case which is not critically distinguishable from the case at hand. I am not convinced that, merely because the purported settlement agreement was reached *in court,* as opposed to the out-of-court settlement reached in the *L & A* case, a different end should result.

I am not condoning or in any way approving, of course, the unprofessional and resource-wasting behavior of the DOT's trial attorney.[1] However, inasmuch as he had no authority to enter into the settlement agreement here, I do not believe that a valid settlement agreement exists.[2]

I would also note that the procedure for settling claims against the DOT is readily ascertainable and is clearly set forth in 37 Pa. Code §141.33. And, inasmuch as persons contracting with a governmental agency must, at their peril, know the extent of the

---

[1] It should be noted that the D.O.T.'s appellate attorney in this case was not the trial attorney.

[2] Although this holding may seem to work a harsh result on those entering into a settlement agreement with a governmental agency, we must keep in mind that public interest favors preservation and insulation of public funds. Moreover, in the interest of the public good, there are times when the benefit to the public in a case such as the instant one, far outweighs the burden put on the person dealing with the governmental agency. *See Department of Transportation v. J. W. Bishop & Co., Inc.,* 497 Pa. 58, 439 A.2d 101 (1981) (holding that statutes of limitations do not apply to the Commonwealth unless the statute specifically so provides); Section 8541 of the Judicial Code, 42 Pa. C. S. §8541 (*providing for* governmental immunity).

In short, I do not believe that the Commonwealth should pay for the misdeeds of counsel acting in direct contravention of the established legal authority.

power of its officers making the contract, *Central Storage & Transfer Co. v. Kaplan*, 487 Pa. 485, 410 A.2d 292 (1979), I believe that Limestone had a duty to ascertain the authority of the DOT's attorney to enter into the agreement.

I would reverse the order of the court of common pleas and remand for the resolution of the appeal by the DOT from the award of the Board of Viewers.

