510 A.2d 1291

In Re: Upset Sale, Tax Claim Bureau of Wayne County, Pennsylvania, Held: 10 September, 1984, Arthur L. Clay and Heather Clay, Former Owners, Exceptors. Richard Walsh and Jane Walsh, his wife, Charles Adonizio and James Johnson, Appellants.

Argued May 15, 1986, before Judges MACPHAIL and COLINS, and Senior Judge ROGERS, sitting as a panel of three.

*Joseph J. Sadowski,* for appellants.

*Raymond L. Hamill,* for appellees.

OPINION BY SENIOR JUDGE ROGERS, June 20, 1986:

This is the appeal of Richard and Jane Walsh, Charles Adonizio, and James Johnson (purchasers) from an order of the Court of Common Pleas of Wayne County sustaining the exceptions of Arthur and Heather Clay (Clays) and setting aside the tax sale of the Clays' property.

This dispute arose as a result of a public tax sale held on September 10, 1984. Two parcels owned by the Clays were sold because the Clays were delinquent in their taxes. The purchasers paid $3,920.85 for one parcel, and $3,910.15 for the other parcel. The common

pleas court, after a hearing, made the following findings of fact:

1. [T]he Tax Claim Bureau of Wayne County sent proper notice of the tax claim sale to the [Clays], who received said notices. Notice is not a question at issue in this case.

2. [S]aid notices were received on August 6th, 1984, and specified the total delinquent amount due as well as the scheduled date of the tax sale, September 10th, 198[4].

3. Arthur Clay testified to the effect that he telephoned the Wayne County Tax Claim Bureau on August 9th, 1984, seeking information regarding the amount of money necessary to stay the sale.

While the clerk was pulling the file to supply him with precise figures, Mr. Clay received a telephone call on another line. He asked Roger Pietraicha, an acquaintance, to pick up the telephone and write down the information.

The Court finds this testimony to be credible.

4. Roger Pietraicha then picked up the telephone and contemporaneously wrote down what he was told.

. . . .

6. Mr. Pietraicha was told that he had until the end of September to make the necessary payment of taxes, that the figures just given to him were good only until the end of August, additional interest and penalties would be due for September.

7. Mr. Clay relied on the information given by the Tax Claim Bureau, being aware that the sale could be continued and remembering from his prior service as Essex County Under Sheriff,

that tax sales were frequently postponed as a common practice, believed that he had until September 30th, 1984 to make the necessary payments to stay the sale.

8. Mr. Clay wrote two (2) checks to the Wayne County Tax Claim Bureau on September 1, 1984, in the amount of . . . $1,367.67 . . . and $1,371.16 . . . to pay the 1982 taxes due, with appropriate interest and penalties. These checks were sent with a cover letter dated September 1st, 1984, by regular mail, but were not received. We find the check stubs and the photocopies of the checks sent to be corroboration of Mr. Clay's testimony.

The facts, as found by the court, summarized are:

On August 9, 1984, Arthur Clay's acquaintance Roger Pietraicha talked on the telephone with an unidentified person in the Tax Claim Bureau concerning the Clays' delinquent taxes who told him that the Clays had until the end of September to pay the taxes. Pietraicha gave Arthur Clay this information.

On September 1, 1984 Arthur Clay mailed two checks in payment of the delinquent taxes to the Tax Claim Bureau. These checks were never received by the Tax Claim Bureau. There is no evidence that the checks, which the court found had been sent on September 1, 1984, were ever returned to Arthur Clay or negotiated by others. The Clays' properties were sold on September 10, 1984.

There is no evidence that the Clays tendered payment of the taxes other than by the asserted mailing of checks made on September 1, 1984; specifically, they did not attempt to pay them after September 10, 1984, and before September 30, an action which would have suggested reliance on misinformation concerning the sale date.

The trial court decided this case solely on the ground of equitable estoppel. It decided that the Tax Claim Bureau and the appellants who purchased the properties at the tax sale should be estopped from defending the regularity of the sale of the properties made September 10, 1984 because an employee of the Tax Claim Bureau told Arthur Clay through his friend Pietraicha, that the delinquent taxes could be paid until the end of September. The court's reasoning is difficult to follow in view of the fact that it believed the Clays' assertion that they had sent checks for payment of the taxes to the Tax Claim Bureau on September 1, 1984. One of the conditions essential to the application of equitable estoppel is that the one invoking it must have relied upon the improper conduct of the party against whom the doctrine is sought to be applied. *Department of Revenue v. King Crown Corp.,* 52 Pa. Commonwealth Ct. 156, 415 A.2d 927 (1980). There is no evidence on this record that the Clays relied on the information assertedly given by the unnamed Tax Claim Bureau employee. The Clays' evidence, accepted by the court, is that they in fact attempted to pay taxes in a timely fashion by mailing checks ten days before the scheduled sale. Moreover, as we have said, there is no evidence that they attempted payment after the sale date of September 10, 1984 and before the end of September.

Of what effect is Arthur Clay's assertion that he mailed checks in payment of the taxes, a subject not discussed by the trial court or the appellees and only cursorily mentioned by the appellants? We think none.

Section 501(a) of the Real Estate Tax Law, 72 P.S. §5860.501(a), sets forth the procedures to be followed in order to redeem property from the effects of the tax claims, and it provides in pertinent part:

Any owner . . . may . . . within one year from the first day of the month in which the notice was mailed, if mailed on or after August first, redeem such property for the benefit of the owner by payment to the bureau of the amount of the aforesaid claim and interest thereon, and the amount of all accrued taxes which remain unpaid, the record costs, including pro rata costs of the notice or notices given in connection with the returns or claims.

*The bureau shall receive and receipt* for said payments, and shall make distribution thereof to the taxing districts entitled thereto. The bureau shall forthwith acknowledge the receipt of the redemption moneys by entering satisfaction on the record of the claim in the office of the bureau which shall be signed by the director. (Emphasis added.)

It is evident that in order to stay a scheduled tax sale, the Tax Claim Bureau must be in receipt of the taxes tendered. Tender of the taxes by mail is reasonable, but not itself sufficient to relieve the delinquent taxpayers from the effects of the tax sale if the payment is not received by the taxing body prior to the sale. *See Witmer Petition,* 16 D. & C. 3d 559 (C.P. Lycoming County 1980) (payment of taxes by mail actually received by the Tax Claim Bureau on the sale date effectively redeemed the property although the envelope had not been opened by the Tax Claim Bureau before the sale).

Since the doctrine of equitable estoppel is inapplicable and the Clays' asserted attempt to pay the taxes was ineffective, we must, and do, reverse the order of the trial court.

ORDER

AND NOW, this 20th day of June, 1986, the order of the Court of Common Pleas of Wayne County in the above-captioned matter is reversed.