# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William W. Gardner and Cynthia : 
Gardner, :
 :
 Petitioners :
 :
 v. : No. 335 F.R. 2015
 : Submitted: December 13, 2018
Commonwealth of Pennsylvania, :
 :
 Respondent :


BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
 HONORABLE PATRICIA A. McCULLOUGH, Judge
 HONORABLE MICHAEL H. WOJCIK, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  January 24, 2019

William W. Gardner and Cynthia Gardner (together, Taxpayers) seek review of the May 1, 2015 order of the Board of Finance and Revenue (Board).[1] The Board found that the Board of Appeals (BOA) properly dismissed the Petitions for Refund filed by Taxpayers on September 29, 2014, as untimely,

_____

[1] Although our review of the Board's order is addressed to our appellate jurisdiction, we essentially function as a trial court and review the Board's decision *de novo*. *Quest Diagnostics Venture, LLC v. Commonwealth*, 119 A.3d 406, 410 n.4 (Pa. Cmwlth. 2015).

because they were filed more than six months after the amount at issue was paid. We affirm.

As required by Rule 1571(f) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1571(f), the parties submitted a Stipulation of Facts and exhibits, which reveal the following. William W. Gardner (Gardner) is the sole owner of Blue Water Aviation, Inc., which is a Delaware "S" corporation. Gardner also is the sole member of two Delaware limited liability companies, North Rock Aviation, LLC, and Blue Water Aviation Services, LLC. (Collectively, the three entities are referred to as the Aviation Entities.)

The Aviation Entities generated a loss for tax purposes for tax years 2009 and 2010. On March 26, 2013, the Department of Revenue (Department) issued assessments for the 2009 and 2010 tax years, allocating 100% of the Aviation Entities' income/losses as rental income/losses. Taxpayers paid the 2009 Assessment ($623,363.00) on October 15, 2013, and the 2010 Assessment ($457,155.00) on November 1, 2013.

At that time, Taxpayers' appeal from personal income tax settlements for the years 2006, 2007, and 2008 (the prior appeal)[2] was pending in this Court. On March 17, 2014, during the course of negotiating a final Stipulation for Judgment, Taxpayers' counsel requested that a statement be added to the stipulation to clarify that, with respect to Blue Water Aviation, Inc., the parties agreed to allocate 75% of profit/loss to trade or business activity and 25% to rental activity. On behalf of the Department, Attorney Kevin A. Moury of the Office of Attorney General responded the following day:

---

[2] *Gardner v. Commonwealth*, (Pa. Cmwlth., 493 F.R. 2011, discontinued per Stipulation of Judgment filed April 14, 2014).

2

Stipulations for judgment only set forth the recalculation of the tax. No other terms of settlement are included and I do not have authority to do so.

This email is your assurance that the 75/25 compromise, in favor of the Taxpayers, will be used to compromise future tax years involving Blue Water Aviation and similar aviation entities. In the event this compromise is not implemented at audit, by the BOA or [Board], it will be implemented upon a timely filed appeal to Commonwealth Court. The Department expressly reserves any and all rights it has or may have regarding reviewing, auditing, assessing and litigating a position different than contained in the first sentence of this paragraph.

Stipulation of Facts, April 5, 2018, Exhibit 3. Later that day, Attorney Moury emailed Taxpayers' counsel as follows:

Also I should add that I will recommend the same 75/25 split for future years unless and until there would be a change in the applicable laws or caselaw [sic] *and provided that there are no jurisdictional defects in any appeal at any state* [sic] *of the proceedings*. Of course, this cuts both ways with respect to a change in law.

*Id*.

The prior appeal was resolved by way of a Stipulation for Judgment on April 14, 2014. On April 30, 2014, Taxpayers' counsel sent an email to "PA Department of Revenue," stating:

Dear Sir/Madam:

Taxpayers entered into a stipulated settlement with the Commonwealth of Pennsylvania for tax years 2006, 2007, and 2008 regarding Pennsylvania Personal Income Tax (PA-40). (A copy of the stipulated settlement is attached.)

3

A major portion of the dispute related to the tax treatment of income/loss for aircraft which were owned and operated under separate legal entities, which were owned wholly by the Taxpayers. After extended negotiations with the Department of Revenue and its counsel, it was agreed that the tax treatment for the tax years in dispute and future tax years, Blue Water Aviation (a pass-through entity) and Taxpayers' other aviation entities would be reported on the Taxpayers' future personal income tax returns [by] allocating the income/loss 75% to business activities and 25% to rental activities. Copies of confirming emails from Kevin A. Moury, Esquire, of the Attorney General's Office (counsel for the Department of Revenue), acknowledging this treatment are attached for your review.

This information is being submitted by the Taxpayers as a supporting statement for the tax reporting method being applied on the Taxpayers' Pennsylvania Personal Income Tax Returns for 2009 and future years.

*Id.* Thereafter, Taxpayers filed amended returns for tax years 2009 and 2010, allocating the income/losses of the Aviation Entities as 75% business income/losses and 25% rental income/losses.

On September 29, 2014, approximately 11 months after making payment of the 2009 and 2010 assessments, Taxpayers filed Petitions for Refund with the BOA. Taxpayers requested a refund of personal income tax paid for 2009 and 2010 on pass-through income/losses from the operation of the Aviation Entities, in the amounts of $37,731.00 and $76,073.00, respectively, asserting that the Department incorrectly characterized the reported income/losses as rental income/losses instead of business income/losses. As support for their refund requests, Taxpayers relied on the outcome of the prior appeal, which raised similar issues.

4

The BOA dismissed the petitions for lack of jurisdiction because the petitions were filed more than six months after the payments were made. Section 3003.1(d) of the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of July 1, 1985, P.L. 78, 72 P.S. §10003.1(d) (providing that "[i]n the case of amounts paid as a result of an assessment, determination, settlement, or appraisement, a petition for refund must be filed with the department within six months of the actual payment of the tax."). By order dated May 1, 2015, the Board affirmed the BOA's decision and dismissed the petitions.

On appeal to this Court,[3] Taxpayers first argue that the settlement of the prior appeal, as reflected in the Stipulation for Judgment and contemporaneous emails, constitutes a binding agreement that is enforceable against the Department under a theory of equitable estoppel. Taxpayers allege that they executed the agreement in reliance on the representations by Attorney Moury that its terms would apply to the subsequent tax years at issue,[4] and they maintain that the Department is estopped from denying the validity of the agreement's terms.

The doctrine of equitable estoppel applies when a Commonwealth agency has intentionally or negligently misrepresented a material fact, knowing or having reason to know that another person would justifiably rely on that misrepresentation, or where the other person has been induced to act to his

---

[3] The parties resolved the issues on appeal concerning tax year 2011, *Garner v. Commonwealth*, (Pa. Cmwlth., No. 464 F.R. 2015, discontinued per Stipulation for Judgment filed December 6, 2018).

[4] Taxpayers do not assert that they made payment of the 2009 and 2010 tax assessments in reliance on the parties' agreement. In fact, those payments were tendered approximately six months before the purported agreement was finalized.

5

detriment because he justifiably relied on the misrepresentation. *Quest Diagnostics Venture, LLC v. Commonwealth*, 119 A.3d 406, 413 n.6 (Pa. Cmwlth. 2015); *Natiello v. Department of Environmental Protection*, 990 A.2d 1196 (Pa. Cmwlth. 2010).

Taxpayers rely on *Borg-Warner Corp. v. Board of Finance and Revenue*, 227 A.2d 153 (Pa. 1967), and *Lapp v. Commonwealth*, 387 A.2d 1312, 1316 (Pa. Cmwlth. 1978), for the proposition that the Attorney General is authorized to settle tax litigation on behalf of the Commonwealth. Next, citing *Department of Public Welfare v. UEC, Inc.*, 397 A.2d 779 (Pa. 1979);[5] *Department*

---

[5] In *UEC, Inc.*, the taxpayers (UEC) entered into a contract with the Department of Public Welfare (DPW), under which UEC would receive approximately $4,000,000 for providing program design and management for a system of model day care centers. The term of the contract was from June 15, 1970, to June 14, 1971. Before the written contract expired, the parties began negotiating an extension. They continued operations beyond the expiration date until October 14, 1971, when the Commonwealth informed UEC that the contract would not be renewed. From that date until February 15, 1973, the Commonwealth repeatedly gave UEC oral assurances that it would pay the balance due under the contract.

On May 2, 1973, UEC filed a complaint with the Board of Arbitration of Claims (board) against DPW, seeking damages for breach of written and oral contracts. DPW filed preliminary objections that were dismissed by the board. DPW appealed to Commonwealth Court, which reversed the board, sustained DPW's preliminary objections, and dismissed UEC's complaint. In doing so, Commonwealth Court held that the cause of action based on the written contract, which expired on June 14, 1971, was barred by the six-month statute of limitations applicable to claims brought against the Commonwealth, and that DPW lacked authority to bind the Commonwealth to the oral agreement.

Reversing, our Supreme Court held that this Court erred in failing to consider the doctrine of estoppel as preventing the Commonwealth from asserting the statute of limitations on claims as a defense to its contractual obligations. The Court cited repeated assurances by Commonwealth officials that the Commonwealth would compensate UEC for the amount owed and never denied liability for the debt. The Court determined that the conduct of Commonwealth officials from October 14, 1971, through February 15, 1973, and ongoing, lulled UEC into a false sense of security regarding the necessity of taking legal action. The Court further held that

**(Footnote continued on next page…)**

6

*of Commerce v. Casey*, 624 A.2d 247, 254 (Pa. Cmwlth. 1993);[6] and *Department of Revenue, Bureau of Sales and Use Tax v. King Crown Corp.*, 415 A.2d 927 (Pa. Cmwlth. 1980),[7] Taxpayers argue that the Department is estopped from denying the validity of the prior settlement agreement. These cases are inapposite.

Unlike the facts in *UEC* and *Casey*, Taxpayers did not rely on the purported agreement to pay the tax assessments for 2009 and 2010. Instead, Taxpayers paid those amounts on October 15, 2013, and November 1, 2013, approximately five months *before* the prior appeal was settled pursuant to the April 14, 2014 Stipulation for Judgment. Essentially, Taxpayers contend that they relied on their understanding of the settlement terms when they signed the Stipulation of

_____

**(continued…)**

application of the doctrine of estoppel should not be denied merely because it was being asserted against the government.

[6] *Casey* was an appeal by the Department of Commerce, involving a contract for services between the Pennsylvania High Speed Intercity Rail Passenger Commission (Commission) and the plaintiff, an expert in the field of high-speed ground transportation. This Court rejected the Department's contention that the contract was not valid, because it was entered into without legal review as required by statute, without competitive bidding, and in violation of various state ethics laws. Relevant here, we further held that the Department of Commerce was estopped from denying the validity of the contract because the plaintiff reasonably relied on the authority of the Commission members and his work product was accepted in its entirety.

[7] In *King Crown Corp.*, taxpayers entered into a written settlement agreement with the Department of Revenue, Bureau of Sales and Use Tax (Commonwealth) for payment of delinquent sale and use taxes. The agreement provided that taxpayers would pay the tax debt on an installment basis. The taxpayers relied on the agreement and made monthly payments. The Commonwealth subsequently began proceedings to enforce its judgment against the taxpayers, claiming that the settlement agreement was null and void because it was not properly approved or documented. This Court held that the Commonwealth was estopped from repudiating its agreement. In doing so, we noted that the taxpayers' belief that a valid compromise had been agreed upon was "fully reasonable." 415 A.2d at 930. However, we remanded for the trial court to determine which specific delinquent assessments were covered by the agreement.

7

Judgment settling the prior appeal. In contrast to the facts in *King Crown Corp.*, Taxpayers' belief that the stipulation's terms would apply to untimely filed refund petitions cannot be deemed reasonable based on this record.

Taxpayers also contend that the agreement does not predicate enforcement upon a timely-filed petition for refund. We conclude that this argument also is without merit. As the Department notes, the March email explicitly states that the applicability of the settlement terms to future tax years is conditioned upon there being no jurisdictional defect at any stage of the proceedings.

The Department further observes that Taxpayers failed to request a refund within the six-month period allowed under Section 3003.1(d) of the Tax Code.

In relevant part, Section 3003.1 of the Tax Code states:

**Petitions for Refunds**:

(a) For a tax collected by the Department of Revenue, a taxpayer who has actually paid tax, interest or penalty to the Commonwealth or to an agent or licensee of the Commonwealth authorized to collect taxes may petition the Department of Revenue for refund or credit of the tax, interest or penalty. Except as otherwise provided by statute, a petition for refund must be made to the department within three years of actual payment of the tax, interest or penalty.

\* \* \*

(d) In the case of amounts paid as a result of an assessment, determination, settlement or appraisement, a petition for refund must be filed with the department within six months of the actual payment of the tax.

(e) A taxpayer may petition the Board of Finance and Revenue to review the decision and order of the department on a petition for refund. The petition for

8

> review must be filed with the board within ninety days of the mailing date of a decision and order of the department upon a petition for refund.

72 P.S. §10003.1(a), (d), (e).

In this instance, Taxpayers paid amounts based on assessments for 2009 and 2010. Requests for refunds of amounts paid as a result of assessments are governed by Section 3003.1(d) and must be filed within six months of the payment date. Taxpayers did not file requests for refunds within the time period allowed under the statute. Because the terms of the purported agreement require the absence of a jurisdictional defect, Taxpayers' untimely refund request would render any such agreement unenforceable.

Taxpayers challenge the BOA's dismissal of the Petitions for Refund as untimely. Specifically, Taxpayers argue that because they seek to enforce the agreement, rather than contest the propriety of the tax collected, the Petitions for Refund are subject to the three-year statute of limitations in Section 3003.1(a) of the Tax Code.[8] In support, citing *Borg-Warner Corp.*, Taxpayers maintain that this Court has recognized a distinction between taxes paid under a settlement and taxes paid *as a result* of an illegal or improper tax. Taxpayers argue that their right to relief is based upon an agreement in this case, and they insist that, because their right to relief arises from an agreement, their Petitions for Refund are not subject to the six-month limitations period in Section 3003.1(d). However, they again overlook the fact that *no tax payments were made in reliance on the purported agreement.*

---

[8] Alternatively, Taxpayers argue that the Petitions for Refund were timely under Section 3003.1(d) of the Tax Code, because they were filed within six months of the agreement and settlement of the prior appeal.

9

Taxpayers were assessed the taxes at issue based on the result of an audit. There is no dispute that Taxpayers filed Petitions for Refund approximately 11 months after paying the 2009 and 2010 tax assessments. The Department argues that compliance with the applicable six-month time limitation in Section 3003.1(d) of the Tax Code "is an absolute condition to obtaining a refund." *Quest*, 119 A.3d at 410. We agree.

In *Quest*, the taxpayer's petition for refund was dismissed as untimely under Section 3003.1(a) of the Tax Code. We affirmed, observing as follows:

> Where, as here, a statute provides a remedy, the directions of the statute must be strictly pursued to obtain the remedy.[9] The time limitation in a tax statute must be strictly enforced to prevent any uncertainty in the budgetary planning and fiscal affairs of the Commonwealth. Compliance with the time limitation in the Tax Reform Code is an absolute condition to obtaining a refund. Section 3003.1(a) of the Tax Reform Code is a statute of repose that extinguishes entitlement to a tax refund upon expiration of the three-year time period set forth therein; it is not a statute of limitations that runs from the time of an injurious occurrence or discovery of such occurrence. Consequently, a petition for refund filed beyond the three-year time period in Section 3003.1(a) is time-barred. The petitioner has the burden of establishing the timeliness of the petition for refund.

119 A.3d at 410 (quotations and citations omitted). Moreover, we explained that equitable estoppel, laches, or equitable tolling cannot vary the statutory requirements: "Neither the [Board] nor this Court has the power to alter the explicit time limitations in the [Tax Code] based on equitable principles." 119 A.3d at 414.

---

[9] Section 1504 of the Statutory Construction Act of 1972, 1 Pa. C.S. §1504.

Consequently, the Board properly dismissed the petitions as untimely under Section 3003.1(d) of the Tax Code.

For the foregoing reasons, we affirm.

_____
MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William W. Gardner and Cynthia    :
Gardner,    :
    :
    Petitioners   :
    :
    v.    :  No. 335 F.R. 2015
    :
Commonwealth of Pennsylvania,    :
    :
    Respondent  :

# **O R D E R**

AND NOW, this 24th day of January, 2019, the order of the Board of Finance and Revenue, dated May 1, 2015, is AFFIRMED. Unless exceptions are filed within thirty (30) days pursuant to Pa. R.A.P. 1571(i), this Order shall become final.

_____
MICHAEL H. WOJCIK, Judge