J-A16040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GERALD COHEN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MICHAEL G. DRYDEN AND WILLIG, WILLIAMS & DAVIDSON | |
| Appellees | No. 3128 EDA 2014 |

Appeal from the Judgment Entered October 7, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): February Term, 2012, No. 336

BEFORE:  LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 22, 2015**

Gerald Cohen appeals from the judgment entered in his favor in the Court of Common Pleas of Philadelphia County in the amount of $100,000 pursuant to a high/low agreement entered into by the parties.  Upon careful review, we affirm.

Cohen was an employee of the St. Mary Medical Center ("St. Mary") and was injured on July 10, 2005 while transporting a patient.  For the first four months following his injury, Cohen received treatment at the Triad, a medical care facility available only to St. Mary's employees.  In November 2005, Cohen began occupational therapy with Chester Ganczarz, an occupational therapist and employee of St. Mary.  On March 2, 2006, Cohen

---

[*] Retired Senior Judge assigned to the Superior Court.

suffered injuries to his neck and shoulder, allegedly as a result of therapy provided by Ganczarz.

In April 2006, Cohen hired Michael G. Dryden and his law firm, Willig, Williams, and Davidson, to represent him in a workers' compensation claim. Dryden filed a claim on Cohen's behalf, which included both the original July 2005 injury and the subsequent March 2006 treatment-related injury. In April 2007, Cohen and St. Mary entered into a stipulation stating that Cohen had sustained a work-related injury on July 10, 2005 and another work-related injury on March 2, 2006. As a result, Cohen received workers' compensation benefits for both injuries. In 2008, Dryden negotiated a compromise and release of Cohen's workers' compensation claim against St. Mary, which conclusively resolved any and all outstanding claims related to the two work-related injuries. A workers' compensation judge approved the release on July 25, 2008.

During this time period, Cohen, represented by different counsel, also filed a medical malpractice claim against St. Mary and Ganczarz for his March 2006 injury. However, after the release was approved in the workers' compensation claim, St. Mary and Ganczarz moved for and was granted summary judgment. On appeal, this Court affirmed on the grounds that, because the workers' compensation judge found that Cohen's March 2, 2006 injuries were work-related, Cohen was collaterally estopped from claiming otherwise. In addition, this Court held that the compromise and release

agreement released St. Mary and Ganczarz from all liability with regard to the March 2, 2006 injuries.

In the matter now before the Court, Cohen claims that Dryden and his law firm committed legal malpractice in the workers' compensation matter that prevented him from recovering on his medical malpractice claim against St. Mary and Ganczarz. Prior to trial, the parties agreed to stipulated damages, in the form of a high/low agreement, as follows: if the Court found against Dryden on the issues presented, Cohen would receive damages of $500,000; if the court found in favor of Dryden on either of the issues, it would enter a finding in favor of Cohen for $100,000.

On September 4, 2014, the Honorable Jacqueline F. Allen held that Cohen could not have recovered in his medical malpractice claim under the dual capacity doctrine and awarded Cohen $100,000 pursuant to the high/low agreement. Cohen's post-trial motions were denied and he filed a timely notice of appeal to this Court, as well as a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Cohen argues that he was entitled to recover on his medical malpractice claim against St. Mary and Ganczarz under the dual capacity doctrine for the injuries he sustained on March 2, 2006, and thus should be awarded $500,000 in damages by agreement of the parties. Brief of Appellant, at 7. Specifically, Cohen claims that the Workers'

Compensation Act ("WCA")[1] provides an exclusive remedy only for injuries sustained in the course of employment and that the Pennsylvania Constitution prohibits any limitations on recovery for injuries not sustained in the course of employment.

Cohen first claims that St. Mary was acting in a dual capacity as both his employer and his medical provider. Cohen claims that when his alleged medical malpractice injury was inflicted on March 2, 2006, he was not acting within the course of his employment, but rather was being treated by St. Mary for a job-related injury he sustained months earlier. Because he was voluntarily receiving treatment at St. Mary, on his own time, Cohen argues that this subsequent injury should not have been included in the workers' compensation compromise and release agreement. Instead, this injury should have been compensable *via* a medical malpractice claim. For the following reasons, we disagree.

The comprehensive system of substantive, procedural, and remedial laws comprising the workers' compensation system is the exclusive forum for redress of injuries[2] in any way related to the work place. ***Alston v. St.***

---

[1] 77 Pa.C.S.A. §§ 1-2708.

[2] The injuries covered under the WCA are defined, in relevant part, as follows:

**§ 411. "Injury," "personal injury," and "injury arising in the course of his employment" defined**

(1) The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an

*(Footnote Continued Next Page)*

*Paul Ins. Cos.*, 612 A.2d 421, 424 (Pa. 1992).  The exclusivity clause[3] of

the WCA bars an employee from bringing a common law cause of action

*(Footnote Continued)* _____

employe[e], regardless of his previous physical condition, except as provided under subsection (f), arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects, and occurring within three hundred weeks after the injury. The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe[e] because of reasons personal to him, and not directed against him as an employe[e] or because of his employment; nor shall it include injuries sustained while the employe[e] is operating a motor vehicle provided by the employer if the employe[e] is not otherwise in the course of employment at the time of injury; but shall include all other injuries sustained while the employe[e] is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe[e], who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe[e]'s presence thereon being required by the nature of his employment.

77 Pa.C.S.A. § 411(1).

[3] The WCA's exclusivity clause provides, in relevant part:

**§ 481. Exclusiveness of remedy; actions by and against third party; contract indemnifying third party**

*(Footnote Continued Next Page)*

against an employer if recovery is possible under the WCA. ***Lord Corp. v. Pollard***, 695 A.2d 767 (Pa. 1997).

> [T]he exclusivity clause of the [WCA] reflects the historical quid pro quo between an employer and employee whereby the employer assumes liability without fault for a work-related injury, but is relieved of the possibility of a larger damage verdict in a common law action. The employee benefits from the expeditious payment of compensation, but forgoes recovery of some elements of damages. An employer's liability and the liability of its compensation carrier are exclusively governed by the [WCA].

***Alston***, 612 A.2d at 424.

In Pennsylvania, the general rule has long been that injuries sustained during the course of treatment for work-related injuries are also classified as work-related and are compensable under and subject to the immunity from suit afforded to employers under the Act. In ***Workmen's Comp. Appeal Bd. v. Ira Berger & Sons***, 368 A.2d 282 (Pa. 1977), the claimant suffered a compensable work injury and entered into a compensation agreement with his employer to receive total disability benefits. The claimant subsequently

*(Footnote Continued)* ─────────────────

> (a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such [employees], his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 Pa.C.S.A. § 481(a).

- 6 -

suffered total disability as a result of improper treatment by a chiropractor for the original work-related injury. The Workers' Compensation Appeal Board denied the employer's request to terminate benefits and held that the "continuation of the disability was a direct result of the intial [work-related] injury." *Id.* at 283. The Commonwealth Court reversed the Board. However, on allowance of appeal, the Supreme Court reversed again, holding that, "as long as the subsequent disability is a result of negligent treatment for the initial injury, the disability is compensable under the Workmen's Compensation Act." *Id.* at 285.

Cohen argues that the exclusivity clause of the WCA should not bar his malpractice action with respect to the injuries sustained during treatment with Ganczarz because St. Mary was acting in a "dual capacity" as medical provider, and not as his employer, at the time the injury occurred. Under the dual capacity doctrine, an employer normally shielded from tort liability by the WCA's exclusive remedy provisions may become liable in tort to its own employee if it occupies, in addition to its capacity as employer, a second capacity that confers upon it obligations independent of those imposed upon it as employer. *Taynton v. Dersham*, 516 A.2d 1241, 1245 (Pa. Super. 1986), citing *Budzichowski v. Bell Telephone Co. of Pennsylvania*, 469 A.2d 111 (Pa. 1983). The doctrine

> is premised on the fact that an employee retains his right to sue a third-party tortfeasor regardless of the existence of the workers' compensation remedy. A third-party tortfeasor's relationship to an injured worker is the same as that between any two parties to a common law suit. Thus[,] an employer who

causes injury to an employee through acts taken in a capacity outside the employment relationship is likened to a third party. The dual capacity doctrine does not abrogate the exclusivity provision. Instead, the doctrine construes the employer in his second capacity to be "someone other than the employer" for the purposes of the act. The duty of care owed by the employer in his second capacity is viewed as a duty external to the employer-employee relationship. The purpose of workers' compensation is to compensate only for losses resulting from risks which are inherent in the employment. When, however, the risks arise from a separate and distinct relationship, such as manufacturer-consumer, the employer-employee relationship becomes coincidental. Under this theory, for example, an employer who is not subject to suit for negligence in his role as an employer may be liable for injuries arising from a separate and distinct relationship, such as manufacturer-consumer.

*Id.* (citation omitted).

Although Pennsylvania courts have discussed the dual capacity doctrine on numerous occasions, the Commonwealth has never explicitly adopted it.[4] Cohen relies on our Supreme Court's decision in *Tatrai v. Presbyterian Univ. Hosp.*, 439 A.2d 1162 (Pa. 1982). There, the appellant was employed as an operating room technician by appellee, Presbyterian University Hospital. On May 27, 1975, during work hours,

---

[4] There is some confusion as to whether the Supreme Court has adopted the dual capacity doctrine. In *Soto v. Nabisco, Inc.*, 32 A.3d 787 (Pa. Super. 2011), this Court stated that "[t]he Pennsylvania Supreme Court has applied the 'dual capacity' doctrine in only one case," that being *Tatrai v. Presbyterian Univ. Hosp.*, 439 A.2d 1162 (Pa. 1982). However, the Supreme Court itself appears to be unsure whether the doctrine was actually adopted by the *Tatrai* Court. *See Budzichowski v. Bell Telephone Co. of Pa.*, 469 A.2d 111 (Pa. 1983) ("Assuming, *arguendo*, that *Tatrai* does adopt the 'dual capacity' doctrine and that it is applicable to this case . . .."). The *Tatrai* decision does not mention the doctrine by name.

Tatrai became ill and was told by her supervisor to go to the hospital's emergency room to seek treatment. While there, Tatrai was placed on an x-ray table. While the table was being rotated to an upright position, the foot stand either became loose or broke away, causing Tatrai to fall and sustain injuries. Tatrai subsequently commenced an action against the hospital, alleging negligence and a breach of warranty of the safety of the hospital's equipment and services. The trial court, finding that the medical treatment was provided to Tatrai as an employee in the normal course of her employment, entered a verdict for the hospital based on the exclusivity clause of the WCA. This Court affirmed.

On allowance of appeal, the Supreme Court reversed. In doing so, the Court concluded that the onset of Tatrai's illness was "an event totally extraneous to the employment scheme" and that "the purpose of going to the emergency room was to ameliorate the disability, not to continue the performance of the employer's affairs." *Id.* at 1165. In light of that, the Court concluded that the injury did not "aris[e] in the course of employment" as defined under the WCA. Moreover, the Court found that Tatrai's presence on the hospital's premises at the time of her injury was not "required under the terms of [her] employment," nor did it "facilitate[] the orderly and expeditious disposition of the employer's affairs." *Id.* Rather, the concern was Tatrai's health and her presence upon the premises at the time of injury was "only a fortuitous circumstance." *Id.* at 1166. As such, there was

- 9 -

no reason to distinguish [Tatrai] from any other member of the public injured during the course of treatment. The risk of injury which [Tatrai] suffered was a risk to which any member of the general public receiving like treatment would have been subjected. The occurrence of the injury was not made more likely by the fact of her employment.

*Id.*

The case at bar is clearly distinguishable from **Tatrai**. Here, unlike Tatrai, Cohen suffered a compensable work injury during the course of his employment by St. Mary. The only treatment sought by Cohen was for the work-related injury, which was not present before the initial accident. But for the work-related injury, Cohen would not have sought treatment from Ganczarz, and would not have suffered the second, treatment-related injury. Accordingly, the second injury is derivative of the initial work-related injury and the exclusivity provision of the WCA is a bar to legal action by Cohen. **Pollard**, **supra**; **Ira Berger**, **supra**.

Cohen next claims that the trial court's ruling was unconstitutional because Article III, Section 18 of the Pennsylvania Constitution prohibits any limitations on recovery for injuries not sustained in the course of employment. Cohen argues that, because his subsequent March 2, 2006 injury did not arise in the course of his employment, "[h]is remedy for that malpractice cannot be constitutionally restricted." Brief of Appellant, at 15.

Pursuant to Pa.R.C.P. 227.1, grounds for post-trial relief must be set forth in a post-trial motion. If not, those grounds are waived. Pa.R.C.P. 227.1; **Empire Trucking Co. v. Reading Anthracite Coal Co.**, 71 A.3d 923 (Pa. Super. 2013). This waiver rule applies even if the issue raised for

the first time on appeal is a constitutional question. ***Coulter v. Ramsden***, 94 A.3d 1080, 1090 (Pa. Super. 2014). Here, Cohen failed to raise this issue before trial, during trial, or in his post-trial motion. Accordingly, the issue is waived on appeal.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/22/2015